OVERTON, Chief Justice.
This cause is before the Court on petition for writ of certiorari to review an order of the Industrial Relations Commission which affirmed the order of the Judge of Industrial Claims, holding the claimant Gardner was not entitled to the “catastrophic loss rate” for a period of six *172 months as provided in Section 440.15(2)(c), Florida Statutes. This statute has never previously been construed. We reverse, finding the claimant is entitled to the catastrophic loss rate under the provisions of the statute.
In this cause, the claimant received a severe electrical shock resulting in organic damage to the central nervous system. The claimant is totally blind, has lost the use of both arms and legs, and in the words of the Judge of Industrial Claims “is comatose, his doctors hold out no surgical hope for cure, nor is any substantial improvement in his condition contemplated, certainly not within six months from the date of injury.”
The parties stipulated to the medical condition and the average weekly wage at the time of the industrial accident. The sole issue was whether the provisions of Section 440.15(2)(c), Florida Statutes, apply so as to raise the claimant’s compensation rate. That statute provides:
Notwithstanding the provisions of paragraph (a), an employee who has sustained the loss of an arm, leg, hand, or foot, or total loss of use of such member, because of organic damage to the nervous system, or has lost the sight of both eyes as provided in paragraph (3)(p), shall be paid temporary total disability of 80 percent of his average weekly wage until such employee has completed his training in the use of artificial members or appliances as necessary and completed training or education under a rehabilitative program pursuant to subsections 440.-49(1), (2), or (3), if provided. In no event should the increased temporary total disability compensation provided for in this paragraph extend beyond 6 months from the date of the injury. The compensation provided by this paragraph is not subject to the limits provided in subsection 440.-12(2), but instead is subject to a maximum weekly compensation rate of $400. If, at the conclusion of this period of increased temporary total disability compensation, the employee is still temporarily totally disabled, the employee shall continue to receive temporary total disability compensation as set forth in paragraphs (a) and (b). The period of time the employee has received this increased compensation will be counted as part of, and not in addition to, the maximum periods of time for which the employee is entitled to compensation under paragraph (a) but not paragraph (b).
The Judge of Industrial Claims held that for the claimant to be entitled to the benefits of Section 440.15(2)(c), Florida Statutes, not only must the loss of the extremities or sight have occurred but the “injured party must be under a training program in the use of artificial members or appliances, or under a rehabilitative program pursuant to F.S. 440.49(1), (2), or (3),” concluding that the provisions of Section 440.15(2)(c), Florida Statutes, did not apply. We disagree.
In our opinion, the catastrophic loss provision was intended to apply to all who had “sustained the loss of an arm, leg, hand, or foot, or total loss of use of such member, because of organic damage to the nervous system, or has lost the sight of both eyes.” This increased compensation rate is restricted to a maximum period of six months or until the employee has completed rehabilitative training, whichever occurs first.
The rehabilitative program provision in the statute requires the claimant, if medically feasible, to make a good faith effort to complete training in the use of artificial members or training under the rehabilitative program pursuant to Section 440.49(1), (2), (3), Florida Statutes. We reject the construction that this provision conditions absolutely the award of the increased compensation rate on the entry into the training program irrespective of its medical feasibility. To so construe this statute would produce an unreasonable result. It would allow the claimant with a rehabilitative injury to receive higher compensation than those with a more serious nonrehabilitative injury.
As an illustration, there could be instances where an individual would suffer loss of extremities or sight and not be able to enter into the training program because of the *173 necessary healing process for other injuries that he or she may have received.
We construe the training provisions of the statute to be a limitation only to the extent that the claimant must exert a good faith effort to complete his rehabilitative training. We recognize, as did counsel for each of the parties and the Judge of Industrial Claims, that the statute was inartfully drawn, but we, if possible, must construe it so it makes sense.[1]
The order of the Industrial Relations Commission affirming the Judge of Industrial Claims’ denial of benefits to the claimant is quashed, and this cause is remanded for the entry of an order consistent herewith.
It is so ordered.
BOYD, ENGLAND and HATCHETT, JJ., concur.
DREW (Ret.), J., dissents with an opinion, with which SUNDBERG and KARL, JJ., concur.

. E. g., Moore v. State, 343 So.2d 601, 604 (Fla. 1977). See generally 30 Fla.Jur. Statutes §§ 77 and 122 (1974).