407 So.2d 1026 (1981)
Miguel SANTIAGO, Appellant,
v.
ORR INDUSTRIES, INC., and Travelers Insurance Company, Appellees.
No. ZZ-113.
District Court of Appeal of Florida, First District.
December 29, 1981.
*1027 Richard A. Kupfer, of Cone, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, for appellant.
James A. Reynolds, Jr., of Adams, Coogler, Watson & Smith, P.A., West Palm Beach, for appellees.
SHIVERS, Judge.
Claimant appeals from a workers' compensation order denying the claim for catastrophic loss benefits and further finding that even if the claimant was entitled to temporary total disability benefits at the 80% catastrophic loss rate, the carrier would be entitled to a credit against further benefits due and owing for money paid the claimant by the employer. We reverse.
Claimant sustained a compensable industrial accident on October 10, 1977, which resulted in the traumatic amputation of three fingers and severe lacerations to his thumb, hand, and fifth finger. At the hearing below, the sole issue was whether claimant was entitled to catastrophic loss benefits under Section 440.15(2)(c), Florida Statutes (1977), and, if so, whether payments made by the employer subsequent to the accident would be credited against catastrophic loss payments found to be due the claimant. Dr. Hoover, treating physician, testified that claimant had a 100% loss of the index, long, and ring fingers, a 50% loss of the fifth finger, and a 25% loss of the thumb, resulting in a 75% impairment of the hand as a whole. The employer/carrier voluntarily paid temporary total disability benefits at the 60% rate from the date of the accident through May 9, 1978, and paid permanent partial disability benefits from the maximum medical improvement date based upon the assigned 75% anatomical impairment.
*1028 The deputy commissioner denied catastrophic loss benefits because "there was no amputation of the hand." The deputy commissioner also found that even if the claimant was entitled to the 80% temporary total disability rate, additional money paid to the claimant by the employer would operate as a credit against any further benefits due and owing since the employer's actions were not intended as a mere gratuity.
The deputy commissioner erred in denying the award of catastrophic loss benefits under Section 440.15(2)(c). Section 440.15(2)(c) authorizes the award of temporary total disability at 80% of the average weekly wage when the claimant "has sustained the loss of an arm, a leg, hand, or foot, or total loss of use of such member because of organic damage to the nervous system." The deputy commissioner misinterpreted the statute to require a complete amputation of the hand as a prelude to an award of catastrophic loss benefits. Section 440.15(2)(c) does not require that the loss result in amputation or total loss of use so akin to amputation as to amount to the same thing before a claimant may be entitled to catastrophic loss benefits. Van Eyk v. R.N. Hicks Construction Company, 377 So.2d 793 (Fla. 1st DCA 1979); Cumberland Farms Dairy, Inc. v. Szajbler, 390 So.2d 1214 (Fla. 1st DCA 1980). Total loss of use in the workers' compensation context indicates the inability to perform functions required in an industrial setting. Hicks, supra, at 794.
There is undisputed evidence in the record to support an award of catastrophic loss benefits since the claimant suffered the loss of use of his hand and was temporarily and totally disabled from performing any work during the six months immediately following the accident. It should be noted that the employer/carrier voluntarily accepted the claimant as temporarily and totally disabled but paid temporary total disability benefits only at the 60% rate. Additionally, an award of catastrophic loss benefits is further supported by the record on the ground that the claimant suffered a total loss of use of the hand because of organic damage to the nervous system. Dr. Hoover testified that the amputation of the fingers and the laceration of the hand involved the amputation of nerves which in turn caused the claimant to develop a neuroma, a painful inflammation of the nerve, requiring surgical excision. Therefore, the denial of the claim for catastrophic loss benefits is reversed.
We also reverse the finding that, even if the claimant was entitled to temporary total disability at the 80% rate, the carrier would be entitled to a credit for money paid to the claimant by the employer because the record shows the employer intended to bestow a gift to the claimant with no desire for credit or reimbursement and that the money was not paid as advance compensation. The deputy commissioner first erred in finding that the periodic payments to the claimant by the employer in addition to the temporary total disability compensation paid were not intended as a gratuity. Section 440.20(12), Florida Statutes (1977), states:
If the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due.
Section 440.20(13), Florida Statutes (1977), provides:
When an employee is injured and the employer pays his full wages or any part thereof during the period of disability ... and the case is contested by the carrier ... and thereafter the carrier, either voluntarily or pursuant to an award, makes a payment of compensation ... the employer shall be entitled to reimbursement to the extent of the compensation paid or awarded ... out of the first proceeds paid by the carrier... . Any payment by the employer over and above compensation paid or awarded ... shall be considered a gratuity.
Where a claimant is paid his regular wage although he does no work for the employer and before a compensation award, the issue of whether the payment should be credited on the award requires the taking of evidence *1029 on the question of whether such payments were intended to be advance payments of compensation or gratuitous payments. Daoud v. Matz, 73 So.2d 51 (Fla. 1954). An overpayment of compensation is presumed to be a gratuity unless there is a specific finding that some other reasonable basis exists for the overpayment. Belam Florida Corporation; Federal Insurance Company v. Dallas Dardy, 397 So.2d 756 (Fla. 1st DCA 1981).
There is no evidence to support the finding that the employer's payments to the claimant in addition to that compensation provided by the carrier were not intended as a gratuity. Instead, the evidence overwhelmingly supports a finding that the employer's payments were intended as a gratuity. Claimant testified that he was still receiving periodic paychecks from his employer, Walter Orr, while he was receiving checks for compensation from the carrier. He understood the checks to be a gift and stated that he was told by the employer that the extra money was simply to help him and there was no expectation of repayment. Walter Orr, the employer's president, substantiated the claimant's testimony. He testified that after the accident he continued to send the claimant periodic paychecks. He testified that he talked to the company accountant about giving the claimant extra money so that he didn't get into a bind and that they decided to put the claimant's checks on the payroll so the business could write it off. He did not tell the claimant that the money was a loan and he did not have any intention or expectation of repayment. He further testified that he had no intention of attempting to recover the money paid in addition to the compensation paid.
The deputy commissioner also erred in finding that the employer's actions were the actions of the carrier and that the carrier was entitled to the credit for the employer's gratuitous payments. A carrier is not entitled to a credit for the amount paid by the employer to the employee. Sweat v. Allen, 145 Fla. 733, 200 So. 348 (1941).
Accordingly, the order denying the claim for catastrophic loss benefits is reversed and remanded for proceedings consistent with this opinion.
REVERSED and REMANDED.
BOOTH and LARRY G. SMITH, JJ., concur.