425 So.2d 622 (1983)
E.B. MALONE CORPORATION and Liberty Mutual Insurance Company, Appellants,
v.
Lemuel Blaine JOHNSON, Appellee.
No. AB-15.
District Court of Appeal of Florida, First District.
January 18, 1983.
*623 David J. Williams and Jon H. Anderson of Lane, Trohn, Bertrand & Williams, Lakeland, for appellants.
Michael B. Murphy of Stanley, Wines & Smith, Auburndale, for appellee.
PER CURIAM.
This cause is before us on appeal by the employer/carrier from a workers' compensation order awarding catastrophic loss benefits from the date of the accident through January 21, 1980, and temporary partial disability benefits thereafter at the fixed rate of $40 per week. The order further determined claimant's average weekly wage, awarded interest, penalties and costs, and reserved jurisdiction to determine attorney's fees. The employer/carrier raises numerous points on appeal. We affirm in part and reverse in part.
Claimant Johnson is a 20-year-old high school graduate who was employed by appellant E.B. Malone Corporation, a manufacturer of mattresses and box springs, as a roll pack machine operator. On October 4, 1979, as he prepared to feed the machine quilting material, Johnson sustained an industrial injury when his right hand became caught in a metal roller, resulting in abrasions and fractures of the proximal bones of his three middle fingers. No injury occurred to the palm of his hand or his thumb. Johnson went immediately to the emergency room of Lake Wales Hospital, where fixation pins were surgically placed into the middle three fingers. After a short hospitalization, Johnson was discharged, ambulatory, with his hand in a cast.
On October 11, 1979, Dr. Casingal, the treating orthopedic surgeon, removed the dressing and noted that Johnson's wound looked clean, the fingers were "alive," and x-rays were satisfactory. On November 16, the pins were removed from Johnson's fingers, and there was no sign of infection. X-rays showed the fractures were healing, and Dr. Casingal assigned Johnson exercises. Although Johnson's fingers remained "moderately stiff" for the next few weeks, Dr. Casingal encouraged Johnson to do exercises and felt that he could return to work by January 17, 1980.
On January 23, 1980, Johnson returned to work for E.B. Malone Corporation at the rate of pay he had received prior to the accident. He was initially assigned work as a material stager but, shortly thereafter, was returned to his former position as a roll pack machine operator at his own request. Johnson testified that, while he was able to work, he sometimes had trouble picking up large rolls of material with both hands. On March 11, 1980, he was terminated because of unexcused absences and unsatisfactory job performance.
On March 19, 1980, Johnson began working as a stock man at Belk-Lindsey. His job consisted primarily of pricing merchandise and loading trucks. On June 16, 1980, *624 Johnson reached maximum medical improvement pursuant to an evaluation by another orthopedic surgeon, Dr. Peacock. Dr. Peacock's assigned maximum medical improvement date was premised upon Johnson's statement that he was satisfied with his hand the way it was and did not desire any other surgery or physical therapy. However, Johnson's hand remained slightly swollen and stiff, and prevented him from performing precision work such as writing for long periods. Accordingly, on August 7, 1980, he informed Dr. Peacock that he wished to resume therapy. On September 19, 1980, Johnson left his job at Belk-Lindsey to look for night work. He subsequently worked for a meat packing company as a laborer for four days but left because the cold temperatures in the freezer bothered his hand.
A hearing was held November 11, 1980, on Johnson's claim for temporary total and/or temporary partial disability, catastrophic loss, and other workers' compensation benefits. The Deputy Commissioner subsequently entered an order determining that Johnson was entitled to catastrophic loss benefits pursuant to Section 440.15(2)(b), Florida Statutes, and Van Eyk v. R.N. Hicks Construction Company, 377 So.2d 793 (Fla. 1st DCA 1979), between the date of the accident and his return to work on January 21, 1980. On appeal, the employer/carrier urges that Van Eyk is distinguishable and that Section 440.15(2)(b) is inapplicable to the type of injuries which occurred in this case.
The catastrophic loss provision, Section 440.15(2)(b), Florida Statutes (1979), in effect on the date of the accident, provides for increased temporary total disability benefits where an employee sustains "the loss of an arm, leg, hand, or foot, or total loss of use of such arm, leg, hand, or foot, or total loss of use of such member because of organic damage to the nervous system." By its very terms, the provision creates an ambiguity. An interpretation of this statute to include as a catastrophic injury the temporary and total loss of use of an arm, leg, hand, or foot would render superfluous the more specific clause requiring the total loss of use of such member because of organic damage to the nervous system. We do not construe the more general clause as extending the right to catastrophic loss benefits but rather, pursuant to established rules of statutory construction, we limit the right to such benefits to cases which meet the criteria of the more qualified language requiring, at least, the total loss of use of an arm, leg, hand, or foot because of organic damage to the nervous system.[1]
This construction makes applicable prior case law interpreting the catastrophic loss provision. In cases under the prior Act,[2] a claimant who is totally unable to perform functions required in his employment due to organic damage to the nervous system is not required to prove amputation or equivalent loss of use in order to obtain catastrophic loss benefits. See, Van Eyk v. *625 R.N. Hicks Construction Company, supra; Santiago v. Orr Industries, Inc., 407 So.2d 1026 (Fla. 1st DCA 1981). Neither may such benefits be conditioned upon the necessity for physical therapy or participation in a rehabilitation program, Gardner v. D.F.S. Construction Company, 358 So.2d 171 (Fla. 1978), although a primary purpose of the provision is to allow additional benefits during the period of adjustment via training in the use of artificial members or appliances and training or education under a rehabilitative program pursuant to Section 440.49, if provided. However, the catastrophic loss provision was never intended to apply to cases such as this, where the claimant sustains, without any organic damage to the nervous system, a short-term and temporary loss of use of one hand due to fractures of three fingers and various abrasions. No reported decision has allowed recovery for such injuries, and, indeed, to do so would result in the award of catastrophic loss benefits in the majority of temporary disability cases wherein any injury, regardless of the degree of severity or lack thereof, to one of the specified parts of the body renders it temporarily useless. Accordingly, the award of catastrophic loss benefits from the date of the accident through January 21, 1980 is reversed.
The employer/carrier also contends that the Deputy erred in awarding claimant temporary partial wage loss benefits at a flat weekly rate of $40 "continuing until such time as [the claimant] is no longer temporarily and partially disabled." Section 440.15(4)(a), Florida Statutes (1979), provides that such benefits "shall be based on actual wage loss" as "compared on a weekly basis." The flat prospective award here, even though it approximated Johnson's actual wage loss, was erroneous. The flat award was tantamount to an award under the prior statute for loss of wage earning capacity and did not sufficiently account for the likelihood of fluctuations in the claimant's actual earnings. Thus, the flat award of $40 per week must be reversed and the cause remanded for a recalculation of the amount of benefits based on claimant's actual wage loss from week to week. See Florida Administrative Code, Rule 38F-3.19.
We also note that the Deputy's finding that Johnson did not voluntarily limit his income was not based on competent substantial evidence, as the uncontroverted testimony was that Johnson voluntarily left his job with Belk-Lindsey on September 19, 1980 to seek more desirable employment. On remand, therefore, the Deputy should apply the "deemed earning capacity" provision of Section 440.15(4)(b), Florida Statutes (1979), to Johnson's wage loss subsequent to September 19, 1980. This section provides that, when a claimant voluntarily limits his income, temporary partial disability benefits shall be based upon "the amount which would have been earned if the employee did not limit his income or accepted appropriate employment." Id.
The employer/carrier's remaining point on appeal is without merit. Accordingly, the order is affirmed in part and reversed in part, and remanded for further proceedings in accordance with this opinion.
BOOTH and THOMPSON, JJ., concur.
ERVIN, J., concurs and dissents with written opinion.
ERVIN, Justice, concurring and dissenting.
I concur in all facets of the majority's opinion except that portion reversing the award of catastrophic loss benefits. The majority correctly observes that the applicable statute is Section 440.15(2)(b), Florida Statutes (1979), providing for increased temporary total disability benefits based upon 80% of the employee's wages at the time of the accident in those instances in which the employee sustains "[1] the loss of [a] ... hand, ..., [2] or total loss of use of such ... hand, ..., [3] or total loss of use of such member because of organic damage to the nervous system, ... ." (e.s.) The 1979 statute thus recognizes three discrete classifications in which the award can be based. Obviously neither the first nor last categories are before us. We are concerned *626 only with that type of injury involving the temporary total loss of the use of claimant's hand during the applicable period.
In my judgment there is both competent and substantial evidence to support the deputy's finding that claimant suffered the temporary total loss of use of his hand from the date of the accident until the date of his return to work, or a period of time shortly less than three months. The medical evidence discloses that the claimant sustained serious fractures of the middle three fingers of his dominant right hand as a result of the industrial accident, and that when claimant was released from the hospital his right hand was placed in a cast from his elbow to his hand, with the three middle fingers immobilized by the placement of pins through the tops of his knuckles. Moreover, when claimant was initially examined, he was advised by his physician that it was possible he might lose some of the fractured fingers due to the severity of the injury and the length of time in which he lost circulation in the fingers.
I strongly disagree with the majority's statement that "the catastrophic loss provision was not intended to apply to cases such as this, where the claimant sustains, without any organic damage to the nervous system, a short-term and temporary loss of use of one hand due to fractures of three fingers and various abrasions." Ante at 625. As we have observed in Santiago v. Orr Industries, Inc., 407 So.2d 1026, 1028 (Fla. 1st DCA 1981), "[t]otal loss of use in the workers' compensation context indicates the inability to perform functions required in an industrial setting." See also Van Eyk v. R.N. Hicks Construction Co., 377 So.2d 793, 794 (Fla. 1st DCA 1979). The crushing force of the injury to claimant's right hand caused him to be totally incapacitated as a worker for nearly three months. The legislature must have contemplated that catastrophic loss awards might be of only short duration since it placed a cap of six months on their continuation.
The majority's narrow construction of the words "total loss of use of such ... hand, ..." as involving injuries other than those suffered by claimant is clearly at variance with the well-recognized maxim of statutory construction that any ambiguity in those provisions of the Workers' Compensation Act according benefits to an injured employee is to be construed liberally in favor of the employee. See Kerce v. Coca Cola Company Foods Division, 389 So.2d 1177 (Fla. 1980). I would, for the reasons stated, sustain the award.
As to the reversal of that portion of the decretal order awarding claimant temporary partial wage loss benefits at a flat weekly rate of $40 and "continuing until such time as [the claimant] is no longer temporarily and partially disabled", I agree that it should be reversed. I think, however, that had a specific amount not been stated, the remaining words limiting the award until such time that claimant "is no longer temporarily and partially disabled" is sufficiently finite in that it necessarily allows for flexibility and encompasses the possibility of a determination of a wage-loss on a month-by-month basis. See Deltona Corp. v. Morris, 418 So.2d 1274 (Fla. 1st DCA 1982). As we observed in Deltona Corp., "[t]here is nothing in the 1979 statute to prevent a party from requesting serial hearings to determine the appropriate benefit for each period of wage-loss." Id. at 1275. The cessation of the condition, therefore, under the Deltona test, places the carrier on notice of the extent of its liability for wage-loss benefits.
I concur in all other facets of the majority's opinion.
NOTES
[1] This conclusion is influenced and buttressed by the legislative history of the statute and the reviser's note to the 1981 amendment which recognized that the inclusion of the more general clause in the 1979 amendment was the result of a redundancy apparently caused by a typographical error. As amended in 1981, Section 440.15(2)(b), Florida Statutes, provides, in pertinent part, as follows:

[A]n employee who has sustained the loss of an arm, leg, hand, or foot, or total loss of use of such member because of organic damage to the nervous system, or has lost the sight of both eyes shall be paid temporary total disability of 80 percent of his average weekly wage until such employee has completed his training in the use of artificial members or appliances as necessary and completed training or education under a rehabilitative program pursuant to s. 400.49, if provided.
[2] Section 440.15(2)(c), Florida Statutes (1977), provided, in pertinent part, as follows:

[A]n employee who has sustained a loss of an arm, leg, hand, or foot, or total loss of use of such member, because of organic damage to the nervous system, or has lost the sight of both eyes as provided in paragraph (3)(p), shall be paid temporary total disability of 80 percent of his average weekly wage until such employee has completed his training in the use of artificial members or appliances as necessary and completed training or education under a rehabilitative program pursuant to subsections 440.49(1)(2), or (3), if provided.