ZEHMER, Judge.
Bordo Citrus Products, the employer, and Liberty Mutual Insurance Company, the carrier, appeal an order awarding claimant catastrophic temporary total disability benefits and temporary partial disability benefits. We affirm in part and reverse in part.
The claimant, Judy Tedder, while working as a citrus grader in a packing plant, sustained injuries to her left hand and wrist in an industrial accident on December 13, 1983. As a result of this injury, the claimant has had three surgeries to her left wrist and had not, at the time of hearing on the appealed order, reached maximum medical improvement.
She was first treated by the company doctor and then referred to Dr. Sullivan, who performed the first operation on her left wrist and put a cast on her left arm. She returned to work about December 15, 1983, just two days after the accident. She continued working from that date until the end of the 1984 citrus season and continued her pattern of seasonal work and collection of unemployment compensation until she left her job at Bordo on February 10, 1986. The claimant is right-handed, and during this time the claimant worked with either a cast or brace on her left arm. Bordo made this possible because it could assign light work grading jobs according to a person’s physical capabilities. Bordo’s occupational health nurse testified that claimant was an excellent worker and Bordo had no problem employing her within her limitation of being able to use only one arm. Bordo was aware, however, that claimant was having continuing pain and discomfort throughout the period of her employment.
Claimant was eventually referred to Dr. Thomas Green, an orthopedic surgeon, who performed a second operation on the left wrist on October 14, 1985. Following the *369 third surgery in April of 1986, Dr. Green became concerned that claimant had an injury to her ulnar nerve. His diagnosis was ulnar carpal abutment syndrome, arthritis of the distal radial ulnar joint, and possible compression of the ulnar nerve. As a result, on October 8, 1986, he placed her arm in a splint that prevented all motion of the elbow and nearly all motion of the wrist. This immobilization of her arm continued through the hearing date of February 4, 1987. Dr. Green opined that claimant’s ulnar nerve was compressed at the elbow and felt that eliminating motion of the elbow would decrease the irritation of the nerve. He testified that claimant’s limitations were based on the amount of pain she was experiencing, rather than paralysis or a functional loss, and that the pain was not totally incapacitating insofar as use of the arm was concerned. When asked whether claimant “sustained any organic nerve damage,” Dr. Green responded that he did not “believe her nerve is functioning normally.” No surgery was performed to repair any nerve damage as a result of the accident, and there is no evidence that any nerves were affected during any of claimant’s three operations.
Based on the recited evidence the deputy commissioner ruled that
the industrial accident of December 13, 1983, in the absence of any other injury to the left wrist represents the logical cause of the Claimant’s nerve problem which has led since October 8, 1986, to a total loss of use of the Claimant’s left extremity. Thus, the undersigned finds the Claimant has been entitled to catastrophic temporary total disability benefits since October 8, 1986, and continuing until such time as she regains the use of her left extremity, or the statutory 26 weeks have been exhausted as a result of the compensable industrial accident of December 13, 1983. See Marriott In-flight Services v. Garcia, 450 So.2d 569 (1st DCA 1984).
We first determine whether claimant has proven she sustained the type of organic damage to the nervous system necessary to qualify for catastrophic injury benefits under section 440.15(2)(b), Florida Statutes (1985). That section provides for payment of “catastrophic” temporary total disability benefits when an employee sustains “the loss of an arm, leg, hand or foot, or total loss of use of such member because of organic, damage to the nervous system.” The statute permits an award of such benefits when organic damage to the nervous system results in total loss of use of a specified limb, even though such loss is temporary rather than permanent. Marriott In-Flight Services v. Garcia, 450 So. 2d 569 (Fla. 1st DCA 1984), pet. for rev. dism., 458 So.2d 273 (Fla.1984). Moreover, the damage need not be to the central nervous system; it is enough that the damage involves peripheral nerves. Hernandez v. Equipment Co. of America, Adjusto, Inc., 452 So.2d 85 (Fla. 1st DCA 1984). The statutory phrase “total loss of use” was rather clearly defined in Atlantic Plastering, Inc. v. O’Hara, 454 So.2d 743 (Fla. 1st DCA 1984) in the following discussion:
Regarding the “total loss of use” requirement of Section 440.15(2)(b), the law is clear that the phrase does not require amputation or loss of use so akin to amputation as to amount to the same thing before a claimant may be entitled to catastrophic loss benefits. Santiago v. Orr Industries, Inc., 407 So.2d 1026, 1028 (Fla. 1st DCA 1981). Therefore, it is irrelevant that O’Hara’s leg was not paralyzed as a result of his injury. The key to “total loss of use” is the inability to perform functions required in an industrial setting considered in light of the use which a claimant must reasonably make of the member (here, a leg) in his employment. See Van Eyk v. R.N. Hicks Construction Co., 377 So.2d 793, 794 (Fla. 1st DCA 1979); Santiago at 1028. Here, the testimony was unrefut-ed that O’Hara’s employment as a plasterer involves climbing up and down scaffolding, bending, carrying various construction material, kneeling, standing and squatting, all for the duration of an eight hour day. The record further demonstrates that, primarily due to the pain and frequent collapse of his leg, the *370 greatest amount of time at any one time that O’Hara can be on his feet is 2½ hours, that he has not worked as a plasterer since the accident and that, due to his back injury and complaints arising therefrom, he could not perform the functions of employment as a plasterer. We find ample support in the record for the deputy’s finding that O’Hara has suffered a “total loss of use” of his leg within the meaning of the statute.
454 So.2d 743, 744. Admitting that O’Hara’s herniated disc was organic damage to the nervous system, the employer and carrier nevertheless argued against the award of benefits because it was the pain rather than the damage to the nerves that was causing the loss of use. But the court stated:
We cannot accept this argument. It is not disputed that the disc injury is the cause of the shooting pain and tendency to collapse that is preventing the use of O’Hara’s leg. It is specious to agree that nerve damage exists, and then to argue that the damage has not caused the loss of use but rather the pain generated by the damage.
Id. at 744-45.
Whether the loss of use of the specified limb is the result of organic damage to the nervous system is a question of fact for the deputy. Hernandez v. Equipment Co. of America, Adjusto, Inc., 452 So.2d 85. It is essential that the evidence show total loss of use of the specified body member because of organic damage to the nervous system, and that this be established by competent medical evidence. Seminole County Board of County Commissioners v. Chaplin, 460 So.2d 544 (Fla. 1st DCA 1984).
We conclude that the record contains competent substantial evidence of total loss of use of claimant’s left arm caused by organic damage to the ulnar nerve within the meaning of the statute as construed and applied in Atlantic Plastering, Inc. v. O’Hara, 454 So.2d 743. There is competent evidence that claimant has suffered damage to her nervous system as defined in that case based on the doctor’s finding of pressure and irritation to the ulnar nerve which causes so much pain that the arm must now be totally immobilized, at least temporarily, in hopes that the condition may improve and heal. Moreover, despite claimant’s prior success in working with only one arm in positions tailored to her disability, it is apparent from the record that the claimant simply cannot use her left arm in her employment environment in that she suffers “the total inability to perform functions required in an industrial setting considered in light of the use which a claimant must reasonably make” of her arm in employment. Atlantic Plastering, Inc. v. O’Hara, 454 So.2d 743, 744. There is no apparent basis for differentiating between the nature of the nerve damage and its effect on the claimant in this case from that suffered by the claimant in the Atlantic Plastering case and Marriott In-flight Services v. Garcia, 450 So.2d 569 (Fla. 1st DCA 1984).
This brings us to appellant’s principal contention — that the award was erroneous because the catastrophic compensation disability award extended “beyond 6 months from the date of injury” as so limited in section 440.15(2)(b), citing our recent decisions in A & J Tie Beam Service v. Kendle, 511 So.2d 653 (Fla. 1st DCA 1987), and Occidental Chemical Co. v. Howard, 508 So.2d 466 (Fla. 1st DCA 1987). The deputy commissioner did not have the benefit of those decisions at the time the appealed order was rendered and, other than the statement that the benefit period begins to run from October 8, 1986, the date claimant’s arm was completely immobilized in the cast, the order does not contain any specific finding as to the date of injury.
While the “date of injury” in most cases may be the same as the date of accident and initial injury, we recognize that there are circumstances in which that may not necessarily be true. We find nothing in section 440.15(2) or other provisions of chapter 440 that would indicate any statutory intent to terminate the six (6) months of catastrophic benefits prematurely because the total loss of use of a limb due to organic damage to the nervous system did *371 not first occur or manifest itself until weeks or months after the initial injury. Rather, the statutory intent is to the contrary. “Accident” is defined in section 440.02(1) to mean “only an unexpected or unusual event or result, happening suddenly.” “Injury” is defined in section 440.-02(14) to mean “personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury.” By definition, then, “injury” includes organic damage to the nervous system that may occur or become manifest well after the date of accident and initial injury because such damage or injury naturally or unavoidably resulted from the initial injury. In this sense, “the date of injury” as used in section 440.15(2)(b) is explicitly different from the “time of injury,” which is defined in section 440.02(20) to mean “the time of the occurrence of the accident resulting in the injury.” To recognize this explicit difference and give effect to the statutory intent to provide a maximum of six months of benefits for the total loss of use of a limb due to organic damage to the nervous system, we hold the term “date of injury” as used in section 440.-15(2)(b) to mean the date on which such organic damage occurs or manifests itself by causing the total loss of use of the affected limb. This construction is completely consistent with our prior decisions.
For example, in Marriott In-Flight Services v. Garcia, 450 So.2d 569 (cited in the deputy’s order), the claimant sustained an initial injury in an accident on November 29, 1981, which was diagnosed as a complete tear of the rotator cuff of his right shoulder. He underwent surgery in March 1982 to repair the cuff, after which his arm was in a cast until approximately April 13, 1982. Thereafter, the claimant’s condition did not improve, and by June 1982 the treating physician determined that the surgery had been unsuccessful. The deputy commissioner awarded catastrophic benefits “for the maximum of six months due to the total loss of use of his right arm.” 450 So.2d 569, 570. Approving the award of catastrophic benefits, we stated:
Although his treating physician, Dr. De-Palma, testified that appellee suffered no immediate damage to his central nervous system as a result of his fall, we believe that the record does support a finding that appellee suffered damage to his nervous system as a result of treatment of the injury. The medical evidence shows that appellee underwent an operation in which, necessarily, nerves were cut as torn muscles were repaired. Therefore, unlike the situation in E.B. Malone Corp. [v. Johnson, 425 So.2d 622 (Fla. 1st DCA 1983)] and Spitzer [v. Bartlett Brothers Roofing, 437 So.2d 758 (Fla. 1st DCA 1983) ], relied upon by appellants, in the instant case, appellee’s industrial injury did result in trauma and damage to his nervous system since the surgery he underwent was a direct result of his injury and that surgery rendered him totally unable to use his arm in an industrial setting for several months, [citations omitted.]
450 So.2d 569, 570. While the opinion is silent as to the “date of injury,” it is clear that such date was considered to be the date of surgery in March, some four months after the date of the accident and initial injury.
The Marriott decision and the recent decisions in A & J Tie Beam Service v. Kendle, 511 So.2d 653 (Fla. 1st DCA 1987), and Occidental Chemical Co. v. Howard, 508 So.2d 466 (Fla. 1st DCA 1987), are not inconsistent. The latter two decisions stand for no more than the statutory proposition that catastrophic benefits cannot extend beyond six (6) months from the date of the totally disabling injury to the nervous system. In Occidental Chemical the deputy commissioner appears to have awarded the catastrophic benefits “from the date of maximum medical improvement.” 508 So.2d at 467. As the material facts were not set forth in either case, nothing stated in either decision indicates that the injury to the nervous system occurred other than on the date of the initial injury referred to therein. Any attempt to construe and apply those decisions as limiting catastrophic benefits under section 440.15(2)(b) to either the date of accident or *372 the date of initial injury would be inconsistent with the explicit language and manifest purpose of the statute and the decision in Marriott.
Although the deputy commissioner’s order found that claimant sustained a total loss of use of her left extremity due to organic damage to the ulnar nerve from October 8,1986, he did not make an explicit finding that this was “the date of injury”. Therefore, the award of catastrophic benefits is reversed and the cause is remanded for determination of the date of such injury consistent with this decision. The deputy commissioner may consider additional evidence should that be deemed necessary.
The deputy commissioner’s alternative award of temporary partial disability benefits is also supported by competent substantial evidence. The deputy commissioner found that claimant conducted a good faith job search, and this finding is not challenged on appeal. The evidence supports the deputy commissioner’s finding that claimant’s inability to locate work is due to her compensable injury.
AFFIRMED IN PART and REVERSED IN PART.
WENTWORTH and NIMMONS, JJ., concur.