241 So.2d 1 (1970)
Charles ABBENANTE, Jr., Petitioner, Cross-Respondent,
v.
UNITED PARCEL SERVICE, INC., Liberty Mutual Insurance Company and the Florida Industrial Commission of the Florida Department of Commerce, Respondents, Cross-Petitioners.
No. 39063.
Supreme Court of Florida.
September 30, 1970.
Rehearing Denied December 3, 1970.
*2 Dan G. Wheeler, Jr., Wheeler & Evans, Miami, for petitioner.
Edwin H. Underwood Jr., Wakefield & Underwood, Miami, Patrick H. Mears and J. Franklin Garner, Tallahassee, for respondents.
FRYE, Circuit Judge.
This case is before us on petition for writ of certiorari by Charles Abbenante, Jr., and cross-petition of the employer-carrier, seeking reversal of an order of The Florida Industrial Commission filed September 24, 1969, affirming an award of compensation benefits.
The petitioner suffered a cut on a finger of his right hand on March 7, 1967, while attempting to lift a refrigerator in the course of his employment as an employee of United Parcel Service, Inc. When the petitioner's finger became infected he was sent to the employer's physician on March 11, 1967 where the physician administered injections of penicillin and tetanus anti-toxin.
On the morning of March 12, 1967, petitioner called the company physician and advised him that he was having trouble using his right arm and leg. The physician had the petitioner come to his office on that Sunday morning when, after examining the claimant, he advised him to apply heat to his arm and leg.
On that same evening the petitioner was in such condition that he was taken to a local hospital and subsequently admitted by the company physician for treatment of a stroke. The diagnosis was that the petitioner had had an occlusion of the left internal carotid artery, producing a cerebral infarct.
The petitioner, a 40 year old male, had been employed by United Parcel, Inc., for four years prior to the accident on March 7, 1967, and was earning an average wage of $125.00 per week.
On April 17, 1967, after release from the hospital, the petitioner was sent by the insurer to its own physician for examination and evaluation. The physician especially looked for any causal relationship between the tetanus anti-toxin injection and the claimant's stroke. This physician expressed as his opinion that "in absence of any other apparent cause for this series of events, it is difficult to avoid the conclusion that there probably was a cause and effect relationship between these events."
Based on the physician's opinion, the employer-carrier authorized surgery in the nature of an endarectomy needed by the petitioner. Admitted to a hospital on November 28, 1967, the petitioner underwent the necessary surgery on December 7, 1967.
On March 5, 1968, after recuperating from surgery, the employer-carrier sent the petitioner to Goodwill Industries, a sheltered employment workshop, for rehabilitation. In July, 1968, after training as a dry cleaning worker, Goodwill Industries sent the petitioner to a prospective employer to try his hand in his new field of employment. The prospective employer released the petitioner after four days on the job because he could not do the simplest type of dry cleaning work. The petitioner returned *3 to the sheltered workshop where he remained until October 1968.
The Judge of Industrial Claims, hearing the case on December 5, 1968, held that the claim was compensable, determined the date of maximum medical recovery to be September 3, 1967, awarded a disability rate of 50% of the body as a whole, and then reduced the rate by one-half after apportioning the award because of the petitioner's pre-existing atherosclerosis.
Both parties appealed to the full commission. The Industrial Relations Commission affirmed, with the Chairman dissenting on the ground that the claim was not compensable and that the Judge of Industrial Claims was in error in apportioning the award.
The date of the petitioner's maximum medical recovery date was found to be September 3, 1967, by both the Judge of Industrial Claims and the full commission. The evidence shows that the petitioner entered the hospital for surgery almost three months later and remained there until December 14, 1967, and thereafter was treated on an out-patient basis by the attending physicians. An order establishing a maximum medical recovery date must be supported by competent and substantial evidence which accords with logic and reason. The September 3, 1967, date does neither. Andrews v. C.B.S. Division, Maule Industries, 118 So.2d 206 (Fla. 1960).
There is no evidence that a portion of the petitioner's disability stems from the atherosclerosis, nor is there any evidence that a portion of the petitioner's present disability resulted from the normal progress of his atherosclerosis as of the time the award was made by the Judge of Industrial Claims. The petitioner had worked for the employer for four years, and had worked everyday, prior to the compensable accidental cut on his finger. If there is no evidence in the record that the petitioner's atherosclerosis was independently producing disability before the accident and there was no evidence indicating that the normal progression of the disease was doing so at the time permanent disability is determined, there can be no normal progression to apportion out of the award. Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967). See also, Tracy v. Americana Hotel, 234 So.2d 641 (Fla. 1970).
The petitioner also urges that the Industrial Relations Commission erred in affirming the Judge of Industrial Claims when he found that the petitioner was not permanently and totally disabled by the chain of events that began when the petitioner cut his finger in a compensable industrial accident.
Until the cut on petitioner's hand on March 7, 1967, he lost no time from work, and he worked everyday during the previous four years. According to the physician who operated on the petitioner, and who saw him as late as November 26, 1968, the petitioner was at that time suffering from spasticity in the left side, weakness on the left side, incoordination involving the left hand, hyperactive reflexes on the left side, hemiparetic spastic gait, particularly on the right, and finally, central facial paresis.
The petitioner testified before the Judge of Industrial Claims that he was crippled in the right arm and in the left leg, that he is nervous and has black outs, that he drools out of the left side of his mouth, that he cannot talk as well as formerly, that his memory is bad and he forgets easily, and again, finally, that he has been adjudicated as permanently disabled for social security purposes.
A vocational employment counselor in testifying before the Judge of Industrial Claims was asked for his opinion, with regard to a reasonable vocational probability, as to whether or not the competitive labor market was open or closed to the petitioner. The counselor was of the opinion that such market was closed to the petitioner. This *4 Court has held that when a worker is injured so that he can perform no services other than those limited in quantity, dependability, or quality, so that a reasonable job in the market does not exist, then under the Florida Workmen's Compensation Law he may be classified as totally disabled. A workman does not have to be absolutely helpless for all purposes to be classified as totally disabled under the law. Port Everglades Terminal Co. v. Canty, 120 So.2d 596 (Fla. 1960).
The cross-petition of the employer-carrier urges that there is no competent substantial evidence of a causal relationship between the injection of tetanus anti-toxin and the petitioner's stroke. The record does however offer substantial medical opinion which, when considered with all the circumstances and evidence in the case, constitutes sufficient evidence to warrant a finding of causal relationship between the injection and the stroke. We affirm the Judge of Industrial Claims in his finding that the injection of the tetanus anti-toxin did cause the petitioner's stroke.
The petition of the claimant is granted and the appealed order is in part quashed, and the cause is remanded to the Judge of Industrial Claims with instructions to enter an appropriate order not inconsistent with this opinion.
It is so ordered.
ERVIN, C.J., CARLTON and BOYD, JJ., and SPECTOR, District Court Judge, concur.