McCORD, Judge.
Appellant Southern Bell Telephone and Telegraph Company, the employer, brings this action for review of the order of the Judge of Industrial Claims which determined that claimant below, Joseph C. Poole, suffered a compensable injury. Claimant died during the course of this appeal, and Janice Poole, as personal representative of his estate, was substituted as party appel-lee. Poole sustained a lumbar disc injury in 1962 as the result of an accident arising out of and in the course of his employment with appellant. He continued to have back problems thereafter. In 1966, an operation was performed on is lower back which involved excision of herniated nuclei between L4 and L5 vertebra and between L5 and SI vertebra which included a spinal fusion. In April of 1968 a further operation was performed on his back to correct fatigue fractures of his lumbar fusion. On January 26, 1971, he was again admitted to the hospital for recurrent herniation of the nucleus at L4 and L5 and continuing pseudoarthrosis, or deterioration and instability of the lumbar fusion. At this time, Dr. Edward Kis-sam, who had treated Poole since 1966 and had performed all of his back operations, found that Poole was probably habituated or addicted to talwin, which he had been taking by injection daily for at least the past year. Another operation was performed on Poole’s low back and additional fragments of nucleus were removed. Dr. Kissam testified that Poole had a 15% permanent impairment to the body as a whole as a result of his back trouble and that his disability rating did not change after the 1969 and 1971 operations. In May 1971 appellant and Poole entered into a stipulation and joint petition for lump sum settlement for Poole’s workmen’s compensation claims against appellant for his back injuries pursuant to § 440.20(10), Florida Statutes, which provides in pertinent part as follows:
Upon the application of any party in interest and after giving due consideration to the interests of all interested parties, if a judge of industrial claims finds that it is for the best interests of the person entitled to compensation, said judge of industrial claims may enter a compensation order requiring that the liability of the employer for compensation shall be discharged by the payment of a lump sum equal to the present value of all future payments of compensation Upon joint petition of all interested parties and after giving due consideration to the interests of all interested parties, if a judge of industrial claims finds that it is for the best interests of the person entitled to compensation, such judge of industrial claims may enter a compensation order approving and authorizing the discharge of the liability of the employer for both compensation and remedial treatment, care, and attendance by the payment of a lump sum equal to the present value of all future payments for both compensation and remedial treatment, care, and attendance . . . .” (Emphasis supplied.)
Above Poole’s signature on the joint petition that resulted in the “wash-out settlement” the following provision appears:
I understand that this petition is a complete release in favor of the employer and carrier and that I will not have any rights left against it or them and will not be able to change or modify this agreement or the order entered hereon. *332 The “wash-out settlement” order discharged appellant from all liability for compensation and remedial benefits, past and future, for Poole’s foregoing back injuries.
Poole continuously worked for appellant until 1977, but sometime in 1969, he requested and received a different type job with appellant. He became a test deskman sitting in a secretarial-type chair taking telephone complaints and dispatching repairmen. He worked an 8-hour day with a 15-minute morning break, a one-hour lunch break, and a 15-minute afternoon break.
The testimony indicates that Poole was free from pain following his operation in 1971 and the wash-out settlement, but sometime in 1972 his back began to hurt again and became so intense that he obtained a doctor’s prescription for talwin, the pain killer which he had taken previously, and administered it to himself through daily injections. Testimony showed that with back trouble like Poole’s, sitting for extended periods of time can cause increased back pain. After he began the use of talwin, Poole noticed a gradual stiffening of his lower extremities. In July of 1976, he visited Dr. Philip M. Toyama, who felt at that time that the stiffness was just a natural progression of Poole’s back problems. Dr. Toyama continued to give Poole prescriptions for injectable talwin. Poole’s stiffness grew worse until he was admitted to the hospital under Dr. Kissam’s care in June 1977. At that time he had essentially no hip or knee motion and had an almost board-like hardness of the muscle tissue extending from his lower rib cage down to his ankles. According to testimony of Dr. Kissam and other doctors, that condition was due to the continuous use of injectable talwin, which transforms normal muscle tissue into a fibrotic condition like scar tissue. Dr. Kissam diagnosed Poole’s condition as muscle fibrosis or brawny edema. Due to his condition, Poole retired in August 1977 unable to work and almost immobile. His condition is expected to be permanent.
In April 1978 appellant made a claim from which this appeal ensued for compensation for the muscular stiffness which resulted from the use of talwin. Appellant disputed the claims on the following grounds, among others: (1) the wash-out settlement entered pursuant to § 440.20(10), Florida Statutes (1977), released appellant from responsibility for any further or future benefits of any nature under the provisions of the workmen’s compensation act; (2) Poole sustained no accidental injury arising out of and in the course of his employment with appellant at any time after the wash-out settlement. The Judge of Industrial Claims found that Poole’s condition was due to the continued use of talwin; that the use of talwin was by prescription and was both reasonable and necessary under the circumstances; that Poole had to resort to the talwin because his working conditions (the sitting requirement) coupled with his pre-existing back condition caused sufficient pain to require the relief given by the drug. Although not specifically stated, he apparently found that the prolonged sitting combined with his low-back problems constituted repeated trauma which caused an exacerbation of pain of which Poole had been free following his 1971 surgery. He further found that in order to maintain his job, it was necessary that Poole take talwin and that such resulted in mutual benefit to both him and his employer; that Poole developed a completely disabling condition as a direct and proximate result of the use of injectable talwin. The judge based his ruling upon the line of cases allowing recovery for injury resulting from repeated exposure to deleterious substances [Czepial v. Krohne Roofing Company, 93 So.2d 84 (Fla.1957), and others] and injury resulting gradually from repeated trauma [Keller Building Products of St. Petersburg v. Shirley, IRC Order 2-3263 (1977), cert. den. 362 So.2d 1054 (Fla.1978)]. He found that Poole’s injury arose out of and in the course of his employment and the claim was not barred by the wash-out settlement. He directed that appellant pay benefits to Poole.
It is clear from the evidence that following the wash-out settlement, Poole did not suffer a new and independent injury. His problems subsequent to the settlement were *333 all related to his previous back injuries. The subsequent pain experienced in his work for which Poole took talwin was the result of the previous injuries. Poole suffered no additional or separate injury to his back after the wash-out settlement. Poole’s disability from muscle fibrosis resulted from medical treatment for pain which resulted from his previous injuries coupled with the requirements of his employment. Cases which have allowed compensation for such disability resulting from medical treatment invariably involve an initially compensable work-related injury followed by medical treatment which then results in further injury. For example, in Abbenante v. United Parcel Service, Inc., 241 So.2d 1 (Fla.1970), an employee sustained a cut finger while attempting to lift a refrigerator in the course of his employment. The finger became infected, and he was sent to the employer’s physician for a tetanus injection. An adverse reaction to the tetanus shot caused a heart attack, and the resulting disability was found to be compensable. This Court has previously stated the rule concerning compensability of injury resulting from medical treatment as follows:
Thus, it appears that the Florida rule is that when an injury necessitates treatment, and the treatment aggravates the original injury, such aggravation is com-pensable.
Warwick v. Hudson Pulp & Paper Company, Inc., 303 So.2d 701 (Fla. 1st DCA 1974).
In Keller Building Products of St. Petersburg v. Shirley, supra, the Industrial Relations Commission set forth six factors to be considered in identifying compensable exposures to deleterious substances. These facts would also be equally applicable in our view to cases alleging repeated trauma. One of the factors is whether or not the exposure subjects the claimant to more than the ordinary hazards confronting people generally. Applying this to the case sub judice, we find that sitting is not such an unusual activity that it could amount to repeated trauma that would give rise to injury. Thus, there having been no subsequent injury to Poole’s back following the wash-out settlement, Poole’s fibrotic condition which resulted from his back pain, which in turn resulted from sitting for long periods at his employment coupled with his previous back injuries, could be related only to such injuries. The fibrotic condition is thus not com-pensable because the wash-out settlement order discharged appellant from all liability for compensation and remedial benefits past and future for the back injuries he had sustained.
REVERSED.
LARRY G. SMITH, and SHIVERS, JJ., concur.