518 So.2d 1320 (1987)
Samuel Roger KIRKLAND, Appellant,
v.
HAROLD PRATT PAVING, INC. and Cincinnati Insurance Company, Appellees.
No. BR-461.
District Court of Appeal of Florida, First District.
December 21, 1987.
*1321 Donna L. Schnorr of Bruce L. Scheiner and Associates, Fort Meyers and Bill McCabe of Shepherd, McCabe & Cooley, Orlando, for appellant.
Mark E. Hungate of Fowler, White, Gillen, Boggs, Villareal & Banker, St. Petersburg, for appellees.
ZEHMER, Judge.
As the result of injuries suffered on November 25, 1985, in a motor vehicle accident during the course of his employment, claimant, Samuel Roger Kirkland, filed a claim for compensation benefits seeking payment of Dr. Frey's bills, additional medical treatment, and temporary total or wage loss benefits from August 21, 1986 to date. The employer, Harold Pratt Paving, Inc., and carrier, Cincinnati Insurance Company, contended that claimant had reached MMI on August 25, 1986, with no permanent disability and that it had not authorized medical treatment by Dr. Frey. A hearing was held on November 12, 1986, at which it was stipulated that temporary total disability (TTD) or temporary partial disability (TPD) benefits had been paid from November 26, 1985 through August 20, 1986. The final order of the deputy commissioner determined the date of maximum medical improvement (MMI), found no permanent impairment, and denied payment of the medical bills and wage loss benefits. Claimant appeals, contending that the order erred in (1) finding that claimant had reached MMI on October 17, 1986; (2) finding that claimant sustained no permanent impairment; (3) denying claimant's request for temporary wage loss benefits from August 21, 1986, through the date of the hearing; and (4) denying payment for Dr. Frey's bills from December 19, 1985 through August 20, 1986. We reverse.

I.
The facts as found in the appealed order are essentially as follows. Claimant, a truck driver for the employer, is an overweight 24 year old male who sustained whiplash injuries to his neck and back in a motor vehicle accident which occurred during the course of his employment. Claimant was examined shortly after the accident at Lee Memorial Hospital where he stated that most of his pain was in his right arm and shoulder. He was x-rayed, given a prescription for Tylenol # 3 and advised to follow up with an M.D. in two days. Claimant failed to return to work and, on November 29, 1985, went to Dr. Frey, a chiropractor, for treatment, admittedly without permission of the employer and carrier.
The order recites that claimant contends that on November 30, 1985, he reported the treatment by Dr. Frey to Harold Pratt, the employer, and that he could no longer work. Claimant contends that Mr. Pratt approved continuing treatment. Claimant continued to see Dr. Frey until March 25, 1986, at which time treatment was also assumed by Drs. Lowell and Young. Claimant was treated by Dr. Frey again on August 11, 1986, again admittedly without seeking authority from the employer and carrier.
The deputy found in the order that claimant admitted he spoke with Mary Watkins, the carrier's representative, on or about December 19, 1985, that she advised that *1322 Dr. Frey could not treat him, and that alternative care was offered through an appointment with Dr. DeIorio set for January 3, 1986. Claimant also admitted that Ms. Watkins also authorized either walk-in or emergency room treatment in the interim. Both claimant and Dr. Frey contend that either by phone or letter, Dr. Frey placed Harold Pratt on sufficient notice that chiropractic treatment was being rendered to claimant.
The deputy considered the depositions of Doctors Lowell, Young and Frey in arriving at his decision. The order recites that Dr. Frey opined that claimant was still suffering the effects of cervical and lumbar strains, had not reached MMI, and possessed limitations against repetitive bending, lifting or driving for lengthy periods, though claimant was released to full time work on August 30, 1986.[1] As of the hearing on November 12, 1986, claimant had last seen Dr. Frey on October 17, 1986 and had missed two scheduled appointments.[2]
The order found that Dr. Lowell, a board certified neurosurgeon, hospitalized claimant for x-rays, CT scan, cervical and lumbar myelograms, nerve conduction studies, lumbar thermogram and bone scan, all of which were interpreted as normal; that Dr. Lowell's diagnosis was lumbar/cervical strain, pain of undetermined etiology; that Dr. Lowell found claimant at MMI on August 25, 1986, with no permanent impairment, able to return to full duty with no restrictions; and that as of November 10, 1986, when his deposition was taken, Dr. Lowell saw no need to continue chiropractic treatment.
The order found that Dr. Young, a neurologist, felt there was no nerve damage and that claimant should have returned to work by May 14, 1986, with a 20-30 pound lifting restriction; that claimant reached neurological MMI on August 14, 1986, with no impairment; that his diagnosis was "recurrent soft tissue injury to the back" which is unrelated to a slight bulge of the L5-S1 disc; and that in his opinion, while this accident caused pain complaints related to a soft tissue injury, claimant's ongoing soft tissue injuries are unrelated to the accident.
The order also found that claimant had returned to part-time work in video sales on August 21, 1986, and has not conducted any job search because the employer has promised full duty when released by Dr. Frey, and he now cares for his children while his wife works.
Regarding Dr. Frey's treatment and bills, the deputy stated in his order that he believed Mr. Pratt's testimony denying that he received any request for treatment by Dr. Frey and that "he and/or his secretary received two phone calls from Dr. Frey's office requesting only the name of the Employer's worker's compensation carrier, never identifying the purpose of the call. These procedures are insufficient as a matter of law to constitute Employer authority for Dr. Frey to treat."[3]
The deputy also determined that "Claimant is not particularly motivated to lose weight or return to full-time work," that he is not impressed with the severity of the injury or claimant's complaints, and finds no justification for his self-imposed limitation to part-time work, failure to pursue a job search for full-time employment and *1323 "failure to keep up treatments by Dr. Frey or Dr. Young." The order also notes that "two respected medical doctors have concluded there is no objective evidence of nerve injury," but that the chiropractor thinks claimant "still suffers from a chronic muscle strain of the cervical and lumbar spine yet has not reached MMI, which I am not totally convinced is related to this accident as opposed to Claimant's obesity." The final order concluded:
As a result of all the evidence including Claimant's lack of motivation and credibility, his failure to keep up treatment with Drs. Frey and Young, the return to work releases, and reasonable trial of chiropractic from 8-20-86 to 10-17-86, I find that Claimant reached overall MMI on October 17, 1986, the date of the last chiropractic treatment according to Dr. Lowell, without permanent impairment, but that TPD is not due from 8-21-86 to 10-17-86 as a result of [claimant's failure to pursue a job search].
(R. 316). The deputy denied payment of Dr. Frey's bills from December 19, 1985 through August 20, 1986.

II.
Claimant first contends that the deputy's finding of MMI is not supported by CSE. Our review of the record reveals that this contention is well taken. The date of MMI marks the point after which no further recovery or improvement from an injury or disease can be reasonably anticipated. Section 440.02(7), Florida Statutes (1985); Hall v. Dade County School Board, 492 So.2d 768 (Fla. 1st DCA 1986); Lewis v. Town & Country Auto Body Shop, 447 So.2d 403 (Fla. 1st DCA 1984). An order establishing the date of MMI must be supported by CSE which accords with logic and reason. Abbenante v. United Parcel Service, Inc., 241 So.2d 1 (Fla. 1970). In this case, the order establishing the date of MMI as October 17, 1986, is not supported by CSE which accords with logic and reason. The testimony of the doctors is uncontroverted that claimant has not yet reached overall MMI. Dr. Lowell, the neurosurgeon, testified that he last saw claimant on August 20, 1986, and gave him a "full duty back to work slip Monday, 25 August." Although he stated that claimant had reached MMI from a neurological standpoint on August 25th and that there was no permanent impairment from the neurosurgical aspect, Dr. Lowell explicitly deferred to Dr. Frey and Dr. Young to determine whether or not claimant had reached overall MMI, that is, MMI in respect to non-neurological problems. Dr. Lowell suggested in his August 1986 report that claimant continue to see Dr. Frey on an as needed basis.
Dr. Young, the neurologist, stated he last saw claimant on August 14, 1986, and that he thought claimant was capable of light work with certain lifting restrictions. Dr. Young stated that from a strictly neurological standpoint claimant had reached MMI and had no neurological impairment, but he likewise explicitly stated that he did not feel claimant had reached MMI for all regimens of medicine. He suggested referring claimant to a center for pain and rehabilitation if conservative treatment of claimant's back pain was not successful.
Dr. Frey, claimant's chiropractor, testified that claimant continued under his care through March 25, 1986, and that claimant experienced progressive improvement. Dr. Frey said claimant returned to him on August 11th and "in my estimation he was a lot worse in August than he was when I  when he discontinued care in March." Dr. Frey last saw claimant on October 17, 1986, and stated that he felt claimant had not yet reached MMI. Dr. Frey further testified that claimant had suffered a permanent injury but hadn't evaluated him for permanent impairment because "I don't usually do that until I feel like they've reached MMI."
Although there is unquestionably competent substantial evidence to support a finding that claimant has reached MMI from a neurological standpoint, the uncontroverted testimony of all three doctors precludes a *1324 finding that claimant has reached overall MMI in respect to the soft tissue injuries. Accordingly, the deputy erred in concluding that claimant reached MMI on October 17, 1986. Cf. Anning-Johnson v. Pearce, 510 So.2d 1041 (Fla. 1st DCA 1987) (although record supports finding that claimant reached MMI from physical standpoint, uncontroverted testimony of claimant's treating psychologist precludes finding that claimant has reached MMI from psychological standpoint).
Because we hold that the deputy erred in finding that claimant reached MMI on October 17, 1986, it is unnecessary to address claimant's second point on appeal. See Orlando Precast Products v. Ciofalo, 501 So.2d 1326 (Fla. 1st DCA 1986) (finding as to permanent impairment premature where claimant has not reached MMI).

III.
Next, claimant contends that the deputy erred in denying him temporary wage loss benefits from August 21, 1986 through the date of the hearing. We agree that the finding that claimant has voluntarily limited his income is supported by competent substantial evidence, but hold that the deputy erred in failing to apply deemed earnings to the facts so found for the following reasons.
As previously stated, Dr. Young released claimant to light work with certain lifting restrictions on May 14, 1986, and Dr. Lowell released claimant to full duty on August 25, 1986. Claimant testified that when Dr. Young released him for light work, he immediately started looking for work and eventually obtained employment in August with Wackenhut as a security guard. He worked with Wackenhut only two days because the job involved too much walking. On August 25, 1986, claimant obtained a job with Curtis Mathes selling videos, where he now works approximately 25 to 28 hours per week. He stated that he does not now work forty hours per week because his employer does not want to push him. Claimant stated he has not conducted job search since starting at Curtis Mathes because "I don't see any use to."
While the evidence does not show that claimant was justified in working part-time as opposed to full-time, and thus voluntarily limited his income in that respect, the deputy erred as a matter of law in denying claimant all wage loss benefits during this period. The evidence does support a finding that claimant has established an ability to earn a certain level of wages per hour by reason of his employment experience with Curtis Mathes, so this earning ability must be compared with his average weekly wage at time of injury. Section 440.15(4)(b), Florida Statutes (1985), states in part:
In the event the employee voluntarily limits his income or fails to accept employment commensurate with his abilities, the salary, wages, and other remuneration the employee is able to earn shall be deemed to be the amount which would have been earned if the employee did not limit his income or accepted appropriate employment.
In those instances in which an employee's actions can be regarded as a voluntary limitation of income, the employee is still entitled to the benefit of deemed earnings under section 440.15(4)(b). Terhune v. North Brothers Co., 504 So.2d 499 (Fla. 1st DCA 1987); E.B. Malone Corp. v. Johnson, 425 So.2d 622 (Fla. 1st DCA 1983).

IV.
Finally, claimant argues that the deputy erred in denying payment for Dr. Frey's bills from December 19, 1985, through August 20, 1986. It is well-established that the employer and carrier are responsible for unauthorized medical care in those instances where the claimant has requested a specific type of medical treatment by one of the types of physicians described in section 440.13(1)(f), if it appears that such treatment is reasonably and medically necessary, and the employer and carrier have *1325 refused to authorize that type of treatment. Section 440.13(2), Florida Statutes (1985); Fuchs Baking Co. v. Estate of Szlosek, 466 So.2d 415 (Fla. 1st DCA 1985). The fact that the employer or carrier may offer orthopedic or neurological care, as was done in this case, does not meet the statutory obligation to authorize a chiropractor in those instances where a claimant requests chiropractic care that is ultimately found to be reasonable and necessary. Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256 (Fla. 1st DCA 1987); Gust K. Newberg Construction Co. v. Warren, 449 So.2d 934 (Fla. 1st DCA 1984); Sears, Roebuck and Co. v. Viera, 440 So.2d 49 (Fla. 1st DCA 1983).
The deputy commissioner did not find that Dr. Frey's services were not reasonably and medically necessary.[4] Rather, he disallowed Dr. Frey's bills on the ground that the communications to Mr. Pratt and his secretary were legally insufficient to establish that Dr. Frey was authorized by the employer. However, the deputy failed to consider that the employer and carrier can become liable retroactively for such care if the carrier defaults in the statutory duty to offer the claimant a list of physicians' names which includes a chiropractor once claimant has requested treatment by such practitioner.
Here, the evidence is undisputed that the carrier was aware, even if the employer had no such knowledge, that claimant was requesting and seeking chiropractic care and treatment, and yet at no time did the carrier authorize Dr. Frey or offer any alternative chiropractic care to the claimant. Mary Watkins, the claims adjuster for the carrier whose testimony the deputy found credible, testified that she was aware that claimant was receiving chiropractic care because she had received medical bills from Dr. Frey and had received Dr. Frey's letter to the employer dated December 4, 1985, indicating that he was treating claimant for injuries sustained in claimant's work-related accident. The carrier was also aware of Dr. DeIorio's report of January 1986 which indicated that claimant was content with his chiropractor and did not wish to be followed by Dr. DeIorio and that claimant had seen Dr. DeIorio only at the carrier's insistence. Further, the carrier was put on notice that claimant wanted chiropractic care and treatment when claimant filed a claim for benefits on January 16, 1986, seeking remedial medical care, including, but not limited to, the payment of Dr. Frey's bills for chiropractic care. In addition, regarding the unpaid medical bills for the period from December 19, 1985 through August 20, 1986, Dr. Frey testified that "to my knowledge, Cincinnati has been billed and the attorney has been sent a bill every time," so the carrier was timely notified of his services and bills.
Once the carrier was placed on notice that claimant was seeking chiropractic care by Dr. Frey, the carrier was statutorily obligated to authorize treatment by Dr. Frey or offer alternative chiropractic treatment or incur the risk that such unauthorized care would be found reasonable and necessary by the deputy. Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256. Since the carrier indisputably defaulted on this duty and thereby defeated the self-executing purpose of the statute, claimant was entitled to proceed with chiropractic care under the direction of Dr. Frey, and the carrier became legally responsible for Dr. Frey's bills.
Accordingly, the appealed order is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] Dr. Frey's actual diagnosis was acute traumatic hyperflexion, hyperextension, cervical spine injury with retrolothesis, C-4, 5, 6 vertebrae and left C-6 IVF encroachment telescoped into thoracolumbar spine with left rotary malposition, L-5 vertebrae, eliciting severe spinal imbalance due to splinting. The plan for claimant's treatment was corrective spinal adjustments as well as therapy on each visit.
[2] The record reflects that claimant had missed his last two appointments with Dr. Frey, for the reason that, according to claimant and Dr. Frey, his supervisor at Curtis Mathes had been changing claimant's work hours so as to conflict with the scheduled appointments.
[3] That the employer would so casually give out such information without first inquiring of the caller's reason for obtaining it is hard to accept as true, but as the reviewing appellate court we necessarily defer to the deputy's determination of the credibility of this witness. The credibility of this testimony is immaterial, however, for reasons explained infra.
[4] Such a finding would have been contrary to the deputy's chastisement of claimaint for missing scheduled appointments for treatment with Dr. Frey between October 17 and the hearing on November 12.