573 So.2d 94 (1991)
Catherine ROLLE, Appellant,
v.
PICADILLY CAFETERIA, Employer, and Old Republic Insurance Co., Carrier, Appellees.
No. 90-41.
District Court of Appeal of Florida, First District.
January 3, 1991.
*95 Stephanie S. Collison, and J. Michael Brennan, Co-Counsel, Fort Pierce, for appellant.
George H. Muller, of Brennan, Hayskar, Jefferson & Gorman, P.A., Fort Pierce, for appellees.
JOANOS, Judge.
Claimant in this workers' compensation case appeals an order of the judge of compensation claims. The three points presented for review are (1) the judge's finding that claimant reached maximum medical improvement on November 1, 1988, with no limitations or residual permanent impairment; (2) the judge's refusal to authorize a chiropractic evaluation or care; and (3) the judge's denial of temporary partial disability or wage loss benefits from November 2, 1988, through August 31, 1989. We reverse the finding that maximum medical improvement was attained by November 1, 1988.
Claimant was injured May 20, 1988, in a slip and fall accident while working as a cook for Picadilly Cafeteria. Treatment was initially provided at a walk-in clinic. On June 27, 1988, claimant was referred to Dr. Floyd, orthopedic surgeon, with complaints of back pain and neck and shoulder pain. Dr. Floyd's initial impression was lumbosacral strain; he treated claimant on several occasions and ordered tests of claimant's lumbar spine, i.e., an EMG, a CT scan, and a lumbar thermogram. The test results were normal. No tests were ordered of claimant's cervical area. Due to her persistent complaints, Dr. Floyd referred claimant to Dr. Barrett, a neurosurgeon. Dr. Barrett's neurological examination yielded normal findings. Therefore, he made no recommendations for treatment.
Dr. Floyd's deposition was taken October 15, 1989. He opined retrospectively that claimant reached maximum medical improvement as of November 1, 1988, with no permanent impairment. Dr. Floyd acknowledged that the EMG study which he ordered had been not completed, due to muscle spasms claimant experienced when the test was attempted. A second EMG was not requested. Dr. Floyd had treated claimant with muscle relaxants and anti-inflammatory medications, a TENS unit, and physical therapy for her lumbar area. No physical therapy was prescribed for her cervical area. On September 20, 1988, Dr. Floyd had released claimant to work with restrictions on lifting, bending, and stooping. On November 1, 1988, he had released claimant to regular duty with no restrictions. Claimant was last seen by Dr. Floyd on December 13, 1988. At that time, her chief complaints were of pain in her left shoulder and low back area, primarily on the left side. At the deposition taken some ten months later, Dr. Floyd stated he would defer to the medical doctor presently treating claimant with regard to her current status.
Dr. Kahn, a neurologist, began treating claimant on January 17, 1989. Claimant consulted Dr. Kahn because she felt other doctors were not dealing with her left shoulder pain. Dr. Kahn's neurological examination revealed a decrease in pinprick sensation on the left side of claimant's body. He treated claimant with pain medication and anti-inflammatory drugs. On January 26, 1989, claimant reinjured her back and was treated at the emergency room. Dr. Kahn's deposition of March 13, 1989, reflects that claimant had not reached maximum medical improvement. He further stated that claimant was able to work, but placed weight limitations on lifting. Dr. Kahn also stated that claimant *96 continued to need medical care for her symptoms.
On April 3, 1989, the parties filed a stipulation and joint petition for an order granting claimant's previously filed claim for additional orthopedic/psychiatric/neurological care. Pursuant to the stipulation, employer/carrier agreed to authorize Dr. Kahn's care, nunc pro tunc, and to pay his bills in accordance with the fee schedule. In addition, employer/carrier agreed to provide claimant with psychiatric and orthopedic care. On April 20, 1989, the judge of compensation claims entered an order consistent with the parties' stipulation.
Although claimant continued treatment with Dr. Kahn, and received physical therapy three times a week, she experienced increased pain and weakness in her left arm and shoulder. When Dr. Kahn saw claimant on May 30, 1989, she reported that she attempted to return to work, and developed a more severe neck pain and an increase in low back pain. She was again treated at the emergency room. Dr. Kahn's examination revealed severe limitation of motion of claimant's neck, with tenderness in the back of the neck. On June 6, 1989, claimant again advised Dr. Kahn that her attempt to return to work at the cafeteria had resulted in severe continuing pain.
Dr. Kahn diagnosed claimant's condition as cervical sprain. On May 30, 1989, Dr. Kahn gave claimant a disability slip, restricting her work to two-hour increments, to be followed by a thirty minute rest, and placed limitations on lifting, repetitive bending, stretching and pulling, or standing for long periods of time. He stated that claimant reached maximum medical improvement from a neurological standpoint as of July 31, 1989, with a four percent permanent impairment of the body as a whole attributable to the cervical sprain, and a five percent permanent impairment of the body as a whole attributable to her low back condition, in accordance with the American Medical Association guidelines.
On October 10, 1989, at the instance of employer/carrier, Dr. Coleman performed a neurological examination, which included nerve conduction studies and an EMG. The nerve conduction studies indicated abnormally slow distal latencies in the sensory conductions of the median and ulnar nerves in both arms. The EMG disclosed equivocal signs of denervation in the single muscle of the left upper extremity. Dr. Coleman suggested an MRI scan of the cervical spine, that claimant continue on her current treatment program of physical therapy, and that she undergo a more formal physical therapy situation, including a work hardening type of program. Dr. Coleman did not think a maximum medical improvement determination could be made until these things had been done.
Treatment of the kind recommended by Dr. Coleman was being provided to claimant at that time by Dr. O'Grady, a chiropractor with whom she began treatment on her own on August 8, 1989. Dr. O'Grady's diagnosis was cervical sprain or strain and lumbar sprain strain. He opined that claimant needs chiropractic care three times a week until her condition stabilizes.
Claimant attempted to return to work at Picadilly Cafeteria three times after Dr. Kahn released her to light duty work. Each time she experienced an increase in pain, and ultimately attempted to find work elsewhere. She submitted requests for disability benefits and documentation of her work search. Employer/carrier controverted some of the requests for benefits; no benefits were paid from November 2, 1988, through August 31, 1989.
The judge of compensation claims found that claimant reached maximum medical improvement as of November 1, 1988, with no limitation or permanent impairment, and that further chiropractic treatment or evaluation was not necessary. The judge denied the claim for temporary partial disability or wage loss benefits, based on the finding that claimant failed to look for or secure employment commensurate with her limitations.
It is a well settled rule that "[t]he date of maximum medical improvement marks the point after which no further recovery or improvement from an injury or disease can be reasonably anticipated." *97 Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320, 1323 (Fla. 1st DCA 1987), review denied, 525 So.2d 878 (Fla. 1988). See also Corral v. McCrory Corp., 228 So.2d 900 (Fla. 1969); Utley-James, Inc. v. Lady, 448 So.2d 1191, 1193 (Fla. 1st DCA 1984). Therefore, a finding of maximum medical improvement is precluded where treatment is being provided with a reasonable expectation that it will bring about some degree of recovery, even if that treatment ultimately proves ineffective. Parker v. Eaton Corp., 554 So.2d 644, 646 (Fla. 1st DCA 1989).
In making the maximum medical improvement finding here at issue, the judge discounted Dr. Kahn's testimony on the ground that Dr. Kahn made no objective neurological findings. However, objective findings are not necessarily essential to establish the validity of a claim. Rather, the nature of the injury may preclude such objective findings. See Scott v. Container Corp. of America, 559 So.2d 399, 401 (Fla. 1st DCA 1990). Further, Dr. Kahn's failure to make such findings does not negate claimant's improvement under his care  which improvement occurred after, and is therefore inconsistent with, the maximum medical improvement date set forth in the order.
Of greater significance, however, is the fact that the judge's determination that claimant reached maximum medical improvement as of November 1, 1988, is contrary to the parties' stipulation and to the judge's order entered thereon, authorizing treatment by Dr. Kahn, a neurologist. The record is clear that Dr. Kahn's treatment was intended to be remedial as opposed to palliative, and indeed, the record reflects that claimant's condition improved under Dr. Kahn's care, until her incidents of reinjury. In addition, we note that the order does not reference the independent medical examination performed by Dr. Coleman at the instance of the employer/carrier. Dr. Coleman found objective evidence of residual impairment which he felt could be related to the industrial accident. He recommended further studies and a continuation of the treatment claimant was receiving at that time from Dr. O'Grady, the unauthorized chiropractor. Dr. Coleman also concluded that maximum medical improvement could not be determined until claimant completed a work-hardening program and a pain management program.
We conclude that the finding that claimant reached maximum medical improvement by November 1, 1988, with no residual permanent impairment is not supported by competent substantial evidence. This finding is contrary to the parties' stipulation and joint petition filed April 3, 1989, and the subsequent order issued pursuant to that stipulation and petition, authorizing treatment by Dr. Kahn. The finding is also contrary to evidence that claimant improved under Dr. Kahn's care subsequent to November 1, 1988, and contrary to Dr. Coleman's recommendation for further testing and treatment, and his view that a maximum medical improvement determination could not be made until claimant had undergone a more formal physical therapy program, a work hardening program, and a chronic pain management program.
Therefore, we reverse the finding that claimant reached maximum medical improvement on November 1, 1988, with no permanent residual impairment, and remand for a redetermination of maximum medical improvement. We do not address the other issues raised by claimant, because the denial of chiropractic care and compensation benefits was predicated upon the finding that claimant reached maximum medical improvement with no permanent impairment. Our reversal on this point will require the judge to reconsider these issues on remand.
SHIVERS, C.J., and MINER, J., concur.