SHIVERS, Senior Judge.
The employee in this workers’ compensation case appeals the judge’s finding that he reached maximum medical improvement (MMI) on March 20, 1991 and therefore, his denial of temporary partial disability (TPD) benefits beyond that date. After a careful review of the evidence presented at the hearing, we find the judge of compensation claims (JCC) erred and reverse.
The evidence contained in the record indicates that, on February 14, 1991, the claimant slipped and fell while working as a waiter for appellee Omni Hotel, sustaining compen-sable injuries to both shoulders. On the day following the accident, claimant went to Baptist Hospital Emergency Room and was seen by Dr. William Nibbs. The X-rays were normal, and claimant was given an anti-inflammatory medication.
In March 1991, claimant was seen by Dr. Robert Capitain on referral from Dr. Nibbs, complaining of pain and tenderness in his shoulders and inability to reach behind his back with his right hand. It was Dr. Capi-tain’s opinion at that time that claimant had tendinitis of the shoulders, and he treated claimant with injections of both a local anesthetic and a steroid. Claimant returned to Dr. Capitain on March 14, 1991, complaining of less right shoulder pain, but problems with his left shoulder. A physical exam revealed tenderness in the rotator cuff muscles. Claimant next saw Dr. Capitain-on March 20, 1991, at which time he was able to raise both arms over his head and behind his back "with minimal pain. Claimant saw Dr. Capitain 11 more times after March 20, 1991, his last visit being on March 23, 1993.
Meanwhile, on March 11, 1992, claimant was given an independent medical examination by orthopedic surgeon William Pujadas. It was then Dr. Pujadas’ opinion upon examination that claimant had “bilateral shoulder pain with impingement and possible rotator *1186 cuff tear.” Dr. Pujadas recommended a course of anti-inflammatory medication and a CT arthrogram of his shoulders, and advised claimant that he would recommend surgery if a rotator cuff tear was found. Dr. Pujadas’ March 11, 1992 office notes indicate that “Mr. Delgado, in respect to this, state[d] that he does not wish to have any surgery.” Claimant apparently cancelled the first scheduled CT. It was ultimately rescheduled for March 19, 1993, and a diagnostic workup done at Baptist Medical Center on March 24, 1993 confirmed that claimant had complete rotator tears in both shoulders.
In a deposition dated April 20, 1993, Dr. Pujadas testified that claimant had three options: 1) to repair the rotator cuff tears surgically; 2) to undergo arthroscopic decompression of the shoulders to relieve his discomfort; or 3) to “just continue with the exercise program and strengthening of the shoulder musculature.” Dr. Pujadas indicated that claimant had chosen to pursue a conservative exercise program, but stated that therapy had not been prescribed for him at that point, and that he had not seen claimant since the CT was performed. When asked whether he felt claimant had reached MMI, Dr. Pujadas testified that he had not, and that, assuming he elected not to have surgery, he would not reach MMI until approximately six to eight weeks after physical therapy was initiated.
In an April 23, 1993 deposition, Dr. Capi-tain testified that claimant had shown improvement at his March 20, 1991 visit, but that he had “not really” improved since that time. It was Dr. Capitain’s opinion, assuming the claimant had elected not to undergo surgery for his rotator cuff tears, that he had reached MMI as of March 20, 1991. On redirect, Dr. Capitain stated that he did not know whether the claimant had completed any type of physical therapy program, and testified that, whether it had been completed or not, “maximum medical improvement to me means that there was no farther progress towards resolution of the problem.”
The claimant testified at the April 28,1993 hearing that he was ready to proceed with surgery, but admitted that just three weeks earlier, at his April 8,1993 deposition, he had not yet decided to have surgery.
In his final order, the JCC accepted Dr. Capitain’s testimony that claimant had reached MMI on March 20, 1991, found that both Dr. Pujadas and Dr. Capitain’s depositions indicated claimant had reached MMI “due to his persistent and repeated refusal” to undergo surgery, and held that, since claimant had not notified the carrier that he was prepared to undergo surgery until the date of the hearing, he could not now “nullify, ab initio, the earlier MMI date by changing his decision to undergo additional medical treatment that was offered, when he had previously refused such.” The JCC therefore denied the claim for TPD benefits from July 1, 1991 through the date of the hearing.
We agree with appellant’s argument on appeal that the JCC’s finding of MMI on March 20, 1991 is not supported by competent substantial evidence in the record. It is well-established that the date of MMI “marks the point after which no further recovery or improvement from an injury or disease can be reasonably anticipated.” Rolle v. Picadilly Cafeteria, 573 So.2d 94, 96 (Fla. 1st DCA 1991), citing Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320, 1323 (Fla. 1st DCA 1987), rev. denied, 525 So.2d 878 (Fla.1988). A finding of MMI “is precluded where treatment is being provided with a reasonable expectation that it will bring about some degree of recovery, even if that treatment ultimately proves ineffective.” Rolle, 573 So.2d at 97. Further, this court has held:
The nature of medical treatment is not to be determined by the ultimate success or failure of the treatments. Treatments are curative in nature if administered or prescribed by a qualified physician with a reasonable expectation that they will bring about some degree of recovery_ Temporary disability continues as long as recovery or lasting improvement in the injured person’s condition can reasonably be expected....
Utley-James, Inc. v. Lady, 448 So.2d 1191, 1193 (Fla. 1st DCA 1984), citing Corral v. McCrory Corp., 228 So.2d 900 (Fla.1969).
*1187 As in Utley-James, Dr. Capitain’s opinion as to when the claimant reached MMI was reached retrospectively, after Capitain had ended his treatment of the claimant, thus constituting a misapplication of the concept of MMI. Although, in retrospect, Dr. Capi-tain saw no improvement in claimant after March 20, 1991, the record is clear that Dr. Capitain continued to treat claimant after that date and, in fact, treated him 11 more times before the diagnosis of rotator cuff tear was ever made. Since claimant was never released from Dr. Capitain’s care or advised that medical care was useless, and since Dr. Capitain’s care was continued with an expectation of some degree of further recovery, an earlier determination of MMI was precluded. See Utley-James.
Second, Dr. Capitain’s opinion that claimant had reached MMI on March 20, 1991 could only have been made with regard to the tendinitis diagnosed by Dr. Capitain since, as of March 20,1991, claimant had not yet even been examined by Dr. Pujadas, and not even a tentative diagnosis of rotator cuff tear had been made. Claimant’s option of surgery to repair the rotator cuff tears had no relation whatsoever to the tendinitis for which Dr. Capitain was treating claimant on March 20, 1991.
Third, the JCC erred in finding that Dr. Pujadas’ deposition indicated that claimant had reached MMI. Dr. Pujadas clearly testified that it was his opinion that claimant would not reach MMI until six to eight weeks after starting physical therapy, but also stated that physical therapy had not yet been prescribed. There is no indication in the record that physical therapy had yet been prescribed as of the date of the merit hearing, and no indication that claimant had refused physical therapy.
Further, although Dr. Pujadas felt as early as November 1992 that claimant had a possible rotator cuff tear, claimant was not diagnosed with a rotator cuff tear until March 24, 1993. It was not until at least that date that claimant was given the three options of surgery, physical therapy, or decompression. Although Dr. Pujadas’ November 1992 office note indicates that claimant did not wish to have surgery, it would be erroneous to consider this a refusal of surgery, since the rotator cuff tears had not yet been confirmed at that time.
In sum, there is insufficient evidence in the record to support the JCC’s conclusion that the claimant persistently and repeatedly refused surgery. Instead, it appears that the claimant simply elected the more conservative route of physical therapy, an option recognized by Dr. Pujadas, but that that option had not yet been made available to him at the time of the hearing. We therefore REVERSE the JCC’s order, and remand for further proceedings.
WEBSTER and MINER, JJ., concur.