518 So.2d 319 (1987)
LOVELL BROTHERS, INC., and Sentry Claims Service, Appellants,
v.
Ray Earl KITTLES, Sr., Appellee.
Nos. BN-11, BM-23.
District Court of Appeal of Florida, First District.
December 8, 1987.
*320 Robert C. Barrett of Cooper, Rissman & Weisberg, Orlando, for appellants.
Ralph J. McMurphy of Green, Simmons, Green, Hightower & Gray, Ocala, for appellee.
ZEHMER, Judge.
Two workers' compensation orders have been consolidated for review on this appeal by the employer and carrier. The first order approved retroactive authorization of Dr. Harry Jones to provide remedial treatment for claimant's low back and left leg problems, excused the doctor's failure to timely file his medical bills and reports covering past treatment, and ordered the employer and carrier to pay claimant's attorney a reasonable fee in an amount to be determined and costs. The second order found claimant was temporarily totally disabled from March 27, 1984, until February 1985 when he commenced sheltered employment with a neighbor, and temporarily partially disabled from February 1985 until September 23, 1985, when he again became temporarily totally disabled; it awarded claimant temporary total disability benefits for the period from March 24, 1984, until February 1985, and temporary partial disability benefits from February 19, 1985, until January 17, 1986, with credit for amounts earned by claimant in his employment with the neighbor during this period. Finding no reversible error, we affirm.
A somewhat detailed recitation of the facts is necessary to an understanding of the deputy commissioner's rulings. Claimant was injured during the course of his employment on October 15, 1983, while lifting an engine block out of a bin. The employer and carrier referred claimant to Dr. Jim Seymore, an orthopedic surgeon, who diagnosed claimant's injury as a lumbar strain and treated claimant based on this diagnosis. By January 19, 1984, claimant returned to work with certain limitations and began working half days. He experienced increased pain from his work activity, however, and ceased all work. Dr. Seymore then referred claimant to Dr. Steve Gilman, who saw claimant on one occasion for examination and evaluation. Dr. Gilman recommended that claimant try walking more, but offered nothing further by way of treatment. At the carrier's request, claimant also saw Dr. Clinton Bush for an orthopedic examination, but Dr. Bush likewise offered nothing by way of treatment. Neither of these two doctors was able to find any objective signs to explain claimant's persisting problems. Claimant continued under the care of Dr. Seymore, and by March 27, 1984, Dr. Seymore concluded that claimant had probably reached maximum medical improvement, but indicated that claimant would probably continue to experience pain and instructed claimant to look for work that did not require repetitive lifting, twisting, or bending, and restricted claimant to lifting not more than forty pounds. Dr. Seymore declined to assign any permanent impairment rating to claimant at that time.
On April 4, 1984, while on a job search, claimant was involved in an automobile accident in which he injured his neck and upper back and aggravated his low back condition. He went to Dr. Seymore and was treated on April 4 and again on April 23 for cervical strain and ligamentous injury to the neck. The problems with the neck and upper back resolved, and claimant did not see Dr. Seymore again until August 1984, when he complained of pain in the low back and left leg. Dr. Seymore indicated that claimant was continuing to experience low back pain as he had predicted on March 27, that it was causally related to his industrial accident in October, and maintained claimant on the same restrictions. *321 Claimant saw Dr. Seymore for the last time in December 1984 while seeking treatment for the low back pain.
In April 1985, claimant, at his own expense, sought treatment for his back pain by a chiropractor, but soon ceased because the treatments did not improve his condition. He did not see another doctor until September 1985, when he went to see Dr. Jones. In August, before seeing Dr. Jones, claimant requested the carrier to authorize Dr. Jones to examine and treat him for the back pain. The carrier refused and informed claimant he could return to Dr. Seymore or Dr. Bush, explaining to claimant that no new physician would be authorized because a new doctor would not be able to determine if claimant's present problems were related to the October 1983 industrial accident. Claimant told the carrier that Drs. Seymore, Gilman, and Bush were not acceptable because they had told him there was no treatment they could offer to alleviate his condition and again specifically requested Dr. Jones, but the carrier refused.
Claimant went to and was evaluated by Dr. Jones on September 23, 1985, even though both claimant and Dr. Jones knew that he was not authorized. The examination revealed tenderness in claimant's back at L5-S1, a grade II muscle spasm, and a positive straight leg raise at sixty degrees. Claimant had a decreased ankle jerk and one-and-one-half-centimeter atrophy of the left leg. Dr. Jones diagnosed nerve root irritation and commenced treatment with steroids to, in the words of the deputy commissioner, "get at the source of the problem, not simply pain medication to treat the symptoms." Dr. Jones opined that claimant was temporarily totally disabled. As of January 16, 1986, Dr. Jones remained of the opinion that claimant was temporarily totally disabled. Dr. Jones did not file any medical bills or reports with the carrier or the Division prior to the hearing.
The deputy commissioner found that claimant's condition improved under the care of Dr. Jones and, as the other three doctors had nothing to offer claimant, that it was in the best interest of the parties that Dr. Jones be authorized. He found that failure to timely file medical bills and reports was excusable in the face of the carrier's repeated refusal to authorize Dr. Jones and notice to controvert the claim for his services. The deputy commissioner retroactively authorized Dr. Jones, directed him to file his medical bills and reports, and ordered the carrier to pay the bills when filed.
In February 1985, claimant began working part-time as a supervisor on his neighbor's farm, earning $8.50 per hour. The neighbor testified that claimant worked in a purely supervisory capacity, explaining to other employees how carpentry work and mechanical repairs should be done. He also testified that claimant could not do manual work and had to have help to do any type of lifting, that he could observe claimant was in pain when working, and that claimant declined to work at times because his back was too painful. The deputy found that claimant was able to do this work for his neighbor only because "he was not required to keep any set hours, was able to quit at his leisure and work as many hours as he felt he was physically able to do."
Regarding the claim for disability benefits, the deputy found that claimant was temporarily totally disabled from March 27, 1984, to February 1985 when he began working for his neighbor, and was temporarily partially disabled from that time until September 23, 1985, when he again became temporarily totally disabled. Based on these findings, the deputy commissioner ordered the carrier to pay benefits accordingly, with appropriate credit for earnings at the neighbor's farm.
Appellants raise four points on appeal: (1) The deputy commissioner erred in awarding retroactive authorization of Dr. Jones, thereby erroneously requiring appellants to pay for unauthorized treatment; (2) The award of temporary total disability benefits is not supported by competent substantial evidence; (3) The award of temporary partial disability benefits is erroneous because there is no competent substantial *322 evidence that claimant performed an adequate job search; and (4) The deputy commissioner erred in awarding claimant attorney's fees, interest, and costs. Only the first point requires extensive discussion.
Section 440.13(2)(b), Florida Statutes (1983), states that "if the employer fails to provide such [medically necessary remedial] treatment, care and attendance after request by the injured employee, the employee may do so at the expense of the employer, the reasonableness and the necessity to be approved by a deputy commissioner." Section 440.13(3) further provides:
If an injured employee objects to the medical attendance furnished by the employer pursuant to subsection (2), it shall be the duty of the employer to select another physician to treat the injured employee unless a deputy commissioner determines that a change in medical attendance is not for the best interests of the injured employee; however, a deputy commissioner may at any time, for good cause shown, in the deputy commissioner's discretion, order a change in such remedial attention, care or attendance.
In the present case, claimant had consulted all the doctors authorized by the carrier. Although these doctors recognized that claimant would continue to suffer pain, none could find objective explanations of the cause and had informed claimant they had no further treatment to offer him. Despite claimant's repeated requests to have Dr. Jones authorized, the carrier refused to permit Dr. Jones or any other new doctor to be authorized. As the deputy commissioner's findings of fact were supported by competent substantial evidence, the deputy was legally justified in concluding that Dr. Jones correctly diagnosed claimant's condition, that the prior doctors had not done so, and that the carrier had erroneously refused to provide further treatment to claimant despite his several requests and despite the confirmation by Dr. Seymore, an authorized physician, that claimant would likely continue suffering pain and have to work with limitations due to his back injury. When the carrier has refused to authorize further medical treatment upon request by the claimant, and the deputy commissioner has determined that such treatment is medically necessary, the cost of such treatment by an authorized physician may be retroactively approved by the deputy commissioner pursuant to the cited statute. See Sears, Roebuck and Co. v. Viera, 440 So.2d 49 (Fla. 1st DCA 1983); Deinema v. Pierpoint Condominiums, 415 So.2d 811 (Fla. 1st DCA 1982). Whether to approve retroactive authorization of Dr. Jones was, under the statute, a matter within the deputy commissioner's discretion, and we find no abuse of that discretion on the particular facts of this case.
Appellants contend that this case is governed by certain cases construing the quoted provisions of section 440.13 as requiring, before payment for services may be ordered, that the claimant first obtain the deputy commissioner's approval of his requested physician when he and the carrier cannot agree to a treating physician in a non-emergency situation, citing Champlain Towers v. Dudley, 481 So.2d 532 (Fla. 1st DCA 1986); Wackenhut Corp. v. Freilich, 464 So.2d 217 (Fla. 1st DCA 1985); Usher v. Cothron, 445 So.2d 387 (Fla. 1st DCA 1984); and City of Fort Lauderdale v. Flanders, 416 So.2d 1234 (Fla. 1st DCA 1982). In view of the unique factual situation present here, we conclude that the deputy commissioner did not err in declining to apply that rule in this case. The carrier's refusal to authorize any new physicians distinguishes this case from one in which the claimant simply disagreed with the carrier and adamantly insisted upon approval of his choice of physician and no one else. The deputy commissioner was clearly justified in finding that claimant continuously insisted upon medical care by a doctor other than those offered by the carrier. Unlike the cases cited by appellants, here the carrier never offered any physician other than the three doctors objected to by claimant.
Likewise, we find no error in the deputy commissioner's excusing the untimely filing of past medical bills and reports *323 under the provisions of section 440.13(2). The employer and carrier knew of Dr. Jones's treatment of claimant after they refused to authorize him or any other new physician, and they failed to present any evidence of prejudice as a result of the untimely filings or that they had not in fact received such reports. Under these circumstances, whether excusal to so file be expressed in terms of good cause shown or waiver, it was not error for the deputy commissioner to so rule in this case. See Watson v. Freeman Decorating Co., 455 So.2d 1097 (Fla. 1st DCA 1984); Willard Kaufman Co. v. Rawlings, 414 So.2d 641 (Fla. 1st DCA 1982). The peculiar facts of this case distinguish it from the application of the rule in Publix Supermarkets, Inc. v. Simpson, 478 So.2d 844 (Fla. 1st DCA 1985).
Appellants' remaining points do not require reversal. The record contains competent substantial evidence, primarily the testimony of claimant's neighbor and Dr. Jones in addition to that of claimant himself, all of which the deputy commissioner expressly accepted, which supports the deputy commissioner's finding of temporary total disability. Similarly, we find competent substantial evidence to support the award of temporary partial disability benefits despite claimant's failure to perform an extensive job search. A good faith job search may be excused where there is medical evidence of claimant's inability to work at gainful employment. Eastside Bait & Tackle v. Humphrey, 440 So.2d 41 (Fla. 1st DCA 1983).
Finding no error, the appealed orders are AFFIRMED.
ERVIN and SHIVERS, JJ., concur.