625 So.2d 21 (1993)
Katherine ROBINSON, Appellant,
v.
SHANDS TEACHING HOSPITAL and Crawford and Company, Appellees.
No. 91-2735.
District Court of Appeal of Florida, First District.
September 14, 1993.
Rehearing Denied October 14, 1993.
Dorothy Clay Sims, Sims & DiLorenzo, Ocala, Joseph C. Segor, Miami, for appellant.
Kay Kiner James, Shands Teaching Hospital, Gainesville, for appellees.
WEBSTER, Judge.
In this workers' compensation case, claimant seeks review of an order which denied reimbursement for previous treatment, and authorization of future treatment, by a particular psychiatrist. Claimant argues that the relief requested should have been granted because the psychologist authorized by the employer and servicing agent could not provide equivalent treatment. We affirm.
Claimant suffered a work-related injury to her hip in December 1989. The injury was accepted as compensable; and Dr. Lane, an orthopedist, was authorized to treat claimant. Dr. Lane diagnosed claimant's injury as a sprain of the adductor muscle.[1]
*22 On January 31, 1990, Dr. Lane concluded that claimant could return to light-duty work, with restrictions regarding walking, climbing, squatting and heavy lifting. He opined that, after a month, those restrictions would no longer be necessary, and claimant could return to full-duty work.
Dr. Lane next saw claimant on March 15, 1990, at which time claimant complained of continued pain. Although Dr. Lane could identify no objective basis for claimant's continued pain, he opined that she was probably suffering from "a chronic irritation of her adductor group." He recommended continued therapy, weight loss and use of a cane; and advised claimant to return in a month for a follow-up.
The only subsequent visit to Dr. Lane reflected in the record was on August 13, 1990, when claimant again complained of pain. Dr. Lane's notes again reflect a lack of any objective basis for claimant's complaints. Dr. Lane also noted that claimant had misrepresented the frequency of her attendance at therapy, and that this was consistent "with the pattern of manipulating the facts that [he] ha[d] experienced in terms of trying to deal with [claimant]." Finally, his August 13 note reflects that "[claimant] states she has been depressed by the problems associated with her job and her persistent pain. I have referred her to Dr. Springer for treatment of her depression" (emphasis added).
Claimant first saw Dr. Springer, who apparently is a psychiatrist, on August 15, 1990, when she attended a group session.[2] On August 20, and again on August 24, the servicing agent told Dr. Springer that he would not be authorized to treat claimant. On August 30, claimant was orally informed that Dr. Springer would not be authorized, but that a psychologist would be authorized. This was followed by a letter of the same date, which referred to the oral communication, and included the following:
We have notes in our file from Dr. Lane, which refers [sic] you to Dr. Springer for psychological counseling. At this time, we are authorizing the following physician [sic]:
 Finnette Fabrick, Ph.D.
 3655 Southwest Second Avenue
 Gainesville, Florida 32607
 Telephone Number: (904) 375-0622
By copy of this letter, we are notifying the physician [sic] that they [sic] are authorized to treat you.
Despite having been notified that Dr. Springer would not be authorized, but that Dr. Fabrick would be, claimant continued to see Dr. Springer. As the result of an interview performed on September 7, 1990, Dr. Springer concluded that "[claimant's] personality appears to be best characterized as depressive." He recommended treatment consisting of "group therapy and medication."
On or about September 25, 1990, claimant filed a claim for benefits. Neither the claim for benefits nor the subsequent application for hearing identified reimbursement for past treatment, or authorization of future treatment, by Dr. Springer (or any other psychiatrist or psychologist) as an issue. However, the pre-trial stipulation filed by the parties did identify as an issue whether "claimant [was] entitled to psychiatric care from Dr. Springer."
On October 4, 1990, claimant submitted to an independent medical examination by Dr. Parr, an orthopedic surgeon. As a result of the examination, Dr. Parr (who testified by deposition) concluded that claimant had suffered "a pulled muscle, or simple groin strain"; that claimant had reached maximum medical improvement prior to the time that he examined her; that claimant had no impairment as a result of the accident, and no restrictions; and that claimant was not in need of any additional treatment. He also opined that claimant had "marked functional overlay," and that she was "a classic malingerer."
At the hearing, when asked what issues claimant intended to address, claimant's attorney responded that the only issue to be addressed at that time was whether claimant *23 was entitled to psychiatric care from Dr. Springer. The record reflects nothing in the form of discussion or argument to suggest the legal basis for the claim.
Claimant testified that Dr. Lane had referred her to Dr. Springer during August of 1990, and that she had been seeing Dr. Springer "on a consistent basis since then." Claimant conceded that she had received the August 30, 1990, letter from the servicing agent regarding authorization of Dr. Fabrick. Claimant testified that the sole reason that she continued to see Dr. Springer, rather than going to Dr. Fabrick, was because she "had already started seeing Dr. Springer," and she "felt comfortable" with him. (The record reflects that claimant saw Dr. Springer only once prior to receipt of the August 30, 1990, letter from the servicing agent; she attended a group session on August 15.) Neither claimant nor anyone else suggested that claimant continued to see Dr. Springer, rather than going to Dr. Fabrick, because Dr. Fabrick was a psychologist rather than a psychiatrist; or because Dr. Fabrick, as a psychologist, could not treat claimant for her depression.
In his order, the judge of compensation claims found that no request had been made for authorization of Dr. Springer before claimant began seeing him; treatment was not required on an emergency basis; Dr. Springer was notified that he would not be authorized; and treatment was authorized with Dr. Fabrick as soon as the employer and servicing agent became aware of claimant's need. Accordingly, the judge denied claimant's request. It is from this order that claimant appeals.
On appeal, claimant, represented by new counsel, argues that she was entitled to treatment by Dr. Springer because the treatment offered by the employer and servicing agent in the form of Dr. Fabrick, a psychologist, was not equivalent to that available from Dr. Springer, a psychiatrist. We reject this argument because it was never presented to the judge of compensation claims. There is nothing in the record to suggest that claimant based her claim upon the proposition that she had requested a psychiatrist, whereas the employer and servicing agent offered only a psychologist; or the proposition that claimant required treatment which only a psychiatrist, rather than a psychologist, could provide. Rather, it is clear from the record that the sole basis for claimant's request was that she "had already started seeing Dr. Springer," and "felt comfortable" with him. In workers' compensation appeals, as in appeals generally, issues which have not been raised below are treated as not preserved, and will not be addressed. E.g., Merritt Sea Wall v. Revels, 594 So.2d 855 (Fla. 1st DCA 1992); Random House/RCA v. Malone, 553 So.2d 357 (Fla. 1st DCA 1989); Sunland Hospital/State of Florida v. Garrett, 415 So.2d 783 (Fla. 1st DCA 1982).
Moreover, even had such an issue been presented to the judge of compensation claims, there was not competent substantial evidence from which one could conclude that claimant's position was meritorious.[3] To entitle her to treatment by a psychiatrist, it was incumbent upon claimant to establish that such treatment was "medically necessary." Section 440.13(2)(a), Fla. Stat. (Supp. 1990). See generally Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320 (Fla. 1st DCA 1987) (employer and carrier are responsible for unauthorized care where claimant has requested that specific type of treatment, and it appears that such treatment is medically necessary), review denied, 525 So.2d 878 (Fla. 1988); Gust K. Newberg Construction Co. v. Warren, 449 So.2d 934 (Fla. 1st DCA 1984) (when claimant challenges, as not equivalent, offer of orthopedist in response to request for chiropractor, judge must determine whether latter was medically necessary). Here, no evidence was presented which would remotely suggest that treatment of claimant's depression by a psychiatrist, as opposed to a psychologist, was medically necessary. The only evidence offered was Dr. Lane's note that "[claimant] states she has *24 been depressed by the problems associated with her job and her persistent pain. I have referred her to Dr. Springer for treatment of her depression." Neither Dr. Lane, Dr. Springer nor anyone else suggested that claimant's depression could be treated only by a psychiatrist.
The issue sought to be raised on appeal was not raised below and, therefore, has not been preserved for review. Accordingly, we affirm.
AFFIRMED.
JOANOS, J., concurs.
ZEHMER, C.J., dissents with written opinion.
ZEHMER, Chief Judge (dissenting).
The issue on appeal is whether the employer and carrier are required to pay for Dr. Springer's psychiatric services to Claimant because the employer and carrier failed to comply with the requirements of section 440.13, Florida Statutes (Supp. 1990). Because the carrier declined the request to authorize Dr. Springer to provide psychiatric care to Claimant and, in response, offered treatment by a psychologist, Dr. Fabrick, Ph.D., I respectfully dissent from the majority's resolution of this issue.
Claimant sought and obtained psychiatric evaluation and treatment from Dr. Springer based on the referral by her authorized treating physician, Dr. Lane. On July 1, 1990, only days before this medical referral was made, section 440.13(2)(a), as amended by the addition of the following emphasized language, became effective:
(2)(a) Subject to the limitations specified in s. 440.19(1)(b), the employer shall furnish to the employee such medically necessary remedial treatment, care, and attendance by a health care provider and for such period as the nature of the injury or the process of recovery may require... . However, no health care provider may refer the employee to another health care provider, diagnostic facility, pain program, work hardening program, therapy center, or other facility without the prior authorization from the carrier or the employer if self-insured except in cases where emergency care is required.

(Emphasis added.) The amending language purports to preclude an authorized treating health care provider from referring an employee/patient to another health care provider for the purpose of obtaining medical diagnosis, evaluation, or treatment, even though deemed necessary by the authorized physician, without first obtaining the carrier's consent and authorization for such referral. This provision was no doubt crafted in an effort to provide the employer and carrier complete control over the delivery of medical services to injured employees for the purpose of curtailing unnecessary medical services and expenses, thereby reducing workers' compensation insurance premiums. This is a laudable purpose with which I have no quarrel. But this purpose, I believe, was not intended be accomplished in the manner revealed by the record in this case; nor do I believe that the majority opinion accords with the intent of the statutory scheme in section 440.13, even after this 1990 amendment became effective.
Seemingly, the amendment to subsection 440.13(2)(a) transferred, from an authorized treating physician trained in medicine to a claims manager not required to have any medical training whatsoever, the discretionary authority to determine whether and when an authorized physician may obtain professional assistance in treating an employee by medical referral to another physician. The claims manager is authorized to decide, except in the case of referral on an emergency basis, whether the treating physician's referral is necessary and reasonable, and will be authorized. As the amendment has been construed and applied by the judge of compensation claims in this case, and now approved in the majority opinion, unless a carrier grants authorization for the treating physician's referral, the burden is on the employee to obtain, before any such medical services on referral are provided, an order of authorization from a judge of compensation claims by proving the medical necessity for the referral services. While awaiting such an order, however, since the carrier has denied authorization, the employee is forced to elect between one of two choices: the employee *25 must either (1) forego receiving any medical services by the physician to whom the employee was referred (unless emergency in nature) until an order of authorization is entered by the judge of compensation claims, or (2) proceed with such diagnosis and treatment at the employee's own expense without any hope or legal basis for recovering the cost of any such medical services that are provided prior to entry of an authorization order by the judge. This limited choice of options necessarily follows from the majority holding because the cost of medical services provided to the employee by the unauthorized physician prior to obtaining authorization from the judge cannot, under that decision, be recovered from the carrier even though the medical services are subsequently shown to be reasonably necessary and required for "the process of recovery."
Reading the 1990 amendment to subsection 440.13(2)(a) in conjunction with other related provisions in chapter 440, I conclude that this result is neither necessary nor consistent with the overall intent of the workers' compensation act. Before discussing my reasons for reaching this conclusion, however, two preliminary comments are in order.
First, Claimant's accident in this case occurred on December 4, 1989, and the majority opinion has treated the July 1, 1990, amendment to subsection 440.13(2)(a) as a procedural statute that can be applied retroactively to accidental injuries occurring before its effective date. I question the validity of a retroactive application of this statute; however, I assume its applicability in this appeal only because no argument has been made against such retroactive application.
Second, the majority opinion has not found it necessary to address Claimant's argument that this amendment amounts to an unconstitutional violation of the provisions guaranteeing free speech and equal protection. I likewise refrain from commenting on these constitutional issues because, in my view, it is unnecessary to reach them based on the principle that, when the statute can be construed and applied in a reasonable manner that avoids the grounds for the constitutional challenges, the court need not reach the constitutional issues. Now, to the merits of the issue on appeal.
I agree with the majority opinion that the presentation of Claimant's case before the judge of compensation claims left much to be desired; nevertheless, I believe that the issue raised on appeal falls within the scope of the matters litigated before the judge of compensation claims and, thus, is cognizable on this appeal. In my view, we are required to consider the merits of the issue raised, contrary to the majority holding.
The following excerpts, quoted verbatim from the order under review, relate to and purport to substantiate the judge of compensation claims's reasons for denying payment of Dr. Springer's bill for the psychiatric services he provided to Claimant. The order recites (the paragraph numbers are my own and are inserted for convenience of reference later on):
Neither the type nor severity of the Claimant's injury, nor any of her medical records, up to the notation in Dr. Lane's records dated August 13, 1990, indicated either directly or indirectly, that the Claimant may require psychiatric care or that she requested or questioned whether she may need such care. It should be noted here that Dr. Lane treated the Claimant on March 15, 1990, and she did not return to see him until July 9, 1990. The Claimant did not return again to see Dr. Lane until August 13, 1990. Over a period of approximately five months, the Claimant chose to see Dr. Lane only three times, and it was not until August 13, 1990, that any mention was made by him that she may require psychological treatment. [Emphasis added.]
In addition, the Claimant did not request psychiatric treatment from the Employer/Carrier. Although Dr. Lane, the Claimant's authorized treating physician, referred the Claimant to Dr. Springer [a psychiatrist], she did not request such treatment nor did she specifically request authorization of treatment by Dr. Springer. [Emphasis added.]
....
... . Dr. Lane referred the Claimant to Dr. Springer, who first saw the *26 Claimant on August 15, 1990, just two (2) days later. There is absolutely no indication in either Dr. Lane's records or Dr. Springer's records that the psychiatric treatment was required on an emergency basis. According to Dr. Springer's psychiatric examination report dated September 10, 1990, the Claimant was "evaluated on a voluntary out-patient basis." The report also indicates that Dr. Springer waited until September 7, 1990, to evaluate the Claimant. The treatment, therefore, was not emergency care, and the Claimant was required to request authorization for Dr. Springer prior to treatment. [Emphasis added.]... .
While it may be true that the Claimant had been referred to Dr. Springer by her authorized physician, Dr. Springer was well aware that he had not been authorized by the Employer/Carrier and, therefore, the Employer/Carrier is not responsible for the treatment he provided to the Claimant. Dr. Springer, in his notes in the Claimant's medical records, wrote that he was informed by the Carrier's attorney that he would "never be authorized to treat Ms. Robinson." In addition, Ms. Merrifield testified that Dr. Springer had been notified on August 20, 1990, and again on August 24, 1990, that he was not authorized to treat the Claimant. Dr. Springer, however, continued to treat the Claimant.
....
... . Here, Dr. Springer not only did not permit the Employer/Carrier time to be notified and to object by first treating the Claimant on August 15, 1990, just two days after referral by Dr. Lane, but he continued to treat and perform an evaluation on the Claimant after he was fully aware that he was not authorized by the Employer/Carrier.
... . Once the Employer/Carrier became aware that psychiatric treatment had been recommended, the Claimant was offered treatment. On August 30, 1990, Ms. Merrifield notified the Claimant, both verbally and via a letter, that psychiatric treatment was authorized with Finnett Fabrick, Ph.D. The claimant had not, prior to Dr. Lane's referral, been treated by either Dr. Springer or Dr. Fabrick. If the Claimant was not satisfied with the physician authorized by the Employer/Carrier, she had the burden of requesting a hearing or risk paying the bill. Wackenhut Corp. v. Freilich, 464 So.2d 217, 218 (Fla. 1st DCA 1985). If the Claimant preferred treatment by Dr. Springer rather than Dr. Fabrick, she had the burden to seek a decision through a Judge to determine which physician should treat her or risk being responsible for payment of the bill. Chase v. Henkel & McCoy, 562 So.2d 831 (Fla. 1st DCA 1990); Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320 (Fla. 1st DCA 1987); and Suez Motel v. Brouwer, 388 So.2d 627 (Fla. 1st DCA 1980) (Section 440.13 Fla. Stat. sets forth procedures for a claimant to follow to have a doctor authorized, failure to follow the procedure warrants denial for payment of treatment)... .
Obviously, to permit the Claimant, who in a non-emergency situation sought treatment without first requesting and securing authorization, to be reimbursed for that medical treatment would be directly contrary to the holding of the Court in Chase, Kirkland, and Teimer. [Emphasis added.]
These findings and conclusions are legally or factually erroneous in the following respects.
First, although the judge found as a fact that the first mention by Dr. Lane of any need for psychiatric treatment occurred in August 1990, some five months after the accident, there is no finding by the judge that Claimant's depression, the ailment for which Dr. Lane referred her to Dr. Springer for examination and treatment, was not causally related to Claimant's compensable accident and resulting injuries. Absent such a finding by the trier of fact, this court should not find or assume, in rendering a decision on appeal, that no such causal relationship exists. On the contrary, remand for appropriate findings on this issue by the judge of compensation claims is the proper remedy. Furthermore, the record belies an absence of evidence on this causation issue. Dr. Springer's medical notes were received in evidence without objection by the Carrier, and those *27 notes contain several references to Claimant's clinical depression due to her continuing pain and disability, and the controversy "over the authenticity of her pain" being raised by Dr. Parr and the Carrier. These statements are inconsistent with a finding that Claimant failed to present any evidence of a relationship between Claimant's mental depression and the effects of her industrial accident and resulting injury.
Second, the finding (quoted in paragraph [2] above) that Claimant never requested psychiatric treatment from the Carrier is not supported by the record and other findings in the order. Of course, I recognize that Claimant personally did not call Carrier's claims manager and directly request Dr. Springer's services, but it is undisputed that a call was made on Claimant's behalf requesting authorization for such treatment by Dr. Springer's office, and the Carrier declined to authorize any treatment in response to this request. Indeed, the Carrier presented the testimony of Debra Beth, who was employed by the Employer to assist in handling these matters, for the sole purpose of proving that Claimant was notified by this witness, when the request was made, that Dr. Springer was not authorized and that Dr. Fabrick was authorized. A letter to that effect was sent to Claimant and put in evidence at the hearing. In light of these undisputed facts, there is no basis in this record for finding that Claimant did not request psychiatric care from the Carrier. Moreover, at oral argument counsel for the Employer and Carrier was most candid and forthright in disclaiming reliance on a lack of knowledge of Claimant's request for psychiatric treatment by Dr. Springer, stating that the Carrier agreed that the Claimant's request for treatment should at least be evaluated by a skilled health care provider, and that is why they offered evaluation and treatment by Dr. Fabrick. Hence, the judge's finding that no request was made is contrary to the evidence and must be disregarded.
Third, the finding (quoted in paragraph [3] supra) that the psychiatric treatment performed by Dr. Springer was not required on an emergency basis is undoubtedly true and consistent with the record. However, this finding is not relevant to any issue argued below or on appeal, as Claimant does not contend that payment of Dr. Springer's bill is due on the basis of emergency treatment.
Fourth, the finding (quoted in paragraph [4] supra) that Dr. Springer knew that he was not authorized, although amply supported by the record, likewise is irrelevant to the issue on appeal. This fact would provide a relevant defense to this claim only if the Carrier had offered appropriate alternative care by another physician of the same practicing group or specialty, i.e., another psychiatrist. This is a matter to be addressed more fully below.
Fifth, I am unable to correlate the evidence in a manner that supports the finding (quoted in paragraph [5] supra) that Dr. Springer proceeded to treat Claimant on August 15 and did not permit the Carrier to be notified and object to any treatment provided by him. As I understand the record, Dr. Springer's office called Carrier's claims manager to request authorization for treatment when Claimant first appeared and the requested authorization was promptly denied. In any event, this finding in paragraph [5] has no relevance to the resolution of the issue on appeal.
Sixth, we come to the most critical errors in the judge of compensation claims's ruling on this claim. In the findings quoted in paragraph [6], supra, the judge found that the Carrier had knowledge of Dr. Lane's referral of Claimant to Dr. Springer for psychiatric treatment (which is inconsistent with the finding that Claimant made no request for such treatment), and that although the Carrier denied authorization of Dr. Springer, it offered psychiatric treatment through Dr. Fabrick. The explicit conclusion in the order, that "if the Claimant was not satisfied with the physician authorized by the Employer/Carrier, she had the burden of requesting a hearing or risk paying the bill," is not a correct statement of the law applicable in these circumstances. Likewise, the judge's conclusion that, "If the Claimant preferred treatment by Dr. Springer rather than Dr. Fabrick, she had the burden to seek a decision through a Judge to determine which physician should treat her or risk being *28 responsible for payment of the bill," (emphasis added) is not a correct statement of the law applicable in the factual circumstances shown by this record and found by the judge's order. I reach these conclusions for the following reasons.
It is apparent that the judge treated the terms psychiatric treatment and psychological treatment as being one and the same thing (the order appears to use the terms interchangeably). Likewise, the judge treated the Carrier's offer of treatment by a psychologist as the equivalent of offering treatment by a psychiatrist in response to the request for psychiatric treatment by Dr. Springer. Throughout the findings in his order, the judge refers to Dr. Springer's having furnished psychiatric treatment to Claimant, not psychological treatment. But the judge recites that once the Carrier became aware that Dr. Lane had recommended psychiatric care by Dr. Springer, a psychiatrist, the Carrier responded by notifying Claimant "that psychiatric treatment was authorized with Finnett Fabrick, Ph.D." and that "If the Claimant preferred treatment by Dr. Springer rather than Dr. Fabrick, she had the burden to seek a decision through a Judge to determine which physician should treat her or risk being responsible for payment of the bill." [Emphasis added.]
The legal deficiency in these findings is perfectly obvious. Dr. Fabrick, a Ph.D. psychologist (and presumably licensed as such under chapter 490, Florida Statutes), is not a physician within the definition in subsection 440.13(1)(h), Florida Statutes (Supp. 1990). That subsection defines "physician" to mean, for purposes of chapter 440,
a physician licensed under chapter 458 [medical doctor], an osteopath licensed under chapter 459, a chiropractor licensed under chapter 460, a podiatrist licensed under chapter 461, an optometrist licensed under chapter 463, or a dentist licensed under chapter 466.
Thus, the Carrier's offer of treatment by Dr. Fabrick, a psychologist, when it notified Claimant that psychiatric treatment by Dr. Springer would not be authorized, was not legally sufficient to constitute an offer of an alternative physician as required by sections 440.13(2) and (3), Florida Statutes (Supp. 1990).
Subsection 440.13(2)(a) requires the employer and carrier to provide a claimant with "medically necessary remedial treatment ... as the nature of the injury or the process of recovery may require... ." Subsection 440.13(2)(c) requires that, "Any list of health care providers developed by a carrier, not including pharmacists, from which health care providers are selected to provide remedial treatment, care, and attendance shall include representation of each type of health care provider defined in s. 440.13(3)(d)1.d., Florida Statutes, 1981, and shall not discriminate against any of the types of health care providers as a class."[4] Subsection 440.13(2)(d) provides in part:
If the employer fails to provide such treatment, care, and attendance after request by the injured employee, the employee may do so at the expense of the employer, the reasonableness and the necessity to be approved by a judge of compensation claims. The employee shall not be entitled to recover any amount personally expended for such treatment or service unless he has requested the employer to furnish the same and the employer has failed, refused, or neglected to do so or unless the nature of the injury required such treatment, nursing, and services and *29 the employer or the superintendent or foreman thereof, having knowledge of such injury, has neglected to provide the same.
Subsection 440.13(3) provides in part:
If an injured employee objects to the medical attendance furnished by the employer pursuant to subsection (2), it shall be the duty of the employer to select another physician to treat the injured employee unless a judge of compensation claims determines that a change in medical attendance is not for the best interests of the injured employee; however, a judge of compensation claims may at any time, for good cause shown, in the judge of compensation claims' discretion, order a change in such remedial attention, care, or attendance. It is unlawful for any employer or representative of any insurance company or insurer to coerce or attempt to coerce a sick or injured employee in the selection of a physician, surgeon, or other attendant or remedial treatment, nursing or hospital care, or any other service that the sick or injured employee may require... .
(Emphasis added.)
Reading all of these provisions in pari materia leaves no doubt that the employer and carrier's statutory duty to provide "medically necessary remedial treatment" is self-executing in the sense that they are obligated to assure that the claimant is provided reasonably necessary medical examination and treatment "as the nature of the injury or the process of recovery may require" when either of them receives notice of such need. Notice may come by a request from the claimant, through information received from the treating physician, or from some other source. Knowledge that Dr. Lane, the authorized orthopedic physician, has referred Claimant to Dr. Springer, a physician of a different discipline, for examination and treatment of a psychiatric condition is sufficient to trigger the employer and carrier's duty to provide such treatment so long as it is medically necessary. Moreover, when the carrier denies a request for treatment by a physician of a particular discipline, it is obligated by the statute to provide the claimant with a choice of other physicians practicing in the same discipline, and cannot coerce the claimant into accepting the carrier's selection of a single physician. In short, in the instant case, Employer and Carrier were obligated to provide authorization of the requested psychiatric treatment for Claimant or obtain a ruling from the judge of compensation claims that such alternative care was not in Claimant's best interest; failure to comply with this obligation rendered them responsible pursuant to subsection 440.13(2) for the unauthorized psychiatric treatment if the judge should later determine that such treatment was reasonable and necessary.
This construction of the statutory language has been recognized repeatedly and applied in diverse circumstances to approve the retroactive authorization of requested medical treatment that was denied by the employer and carrier. See, e.g., Dubois Farms, Inc. v. Paul, 566 So.2d 923 (Fla. 1st DCA 1990) (When carrier delayed in offering treatment by alternative physician until after claimant had established a doctor-patient relationship, it was liable for treatment by unauthorized physician found to be reasonable and necessary, following Chase v. Henkel & McCoy, 562 So.2d 831 (Fla. 1st DCA 1990)); Jackson v. Publix Supermarkets, Inc., 520 So.2d 50 (Fla. 1st DCA 1988) (employer and carrier, while authorizing other forms of medical care, failed to authorize chiropractic care as requested or to offer alternative chiropractic care, and claimant obtained chiropractic care on her own); Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320 (Fla. 1st DCA 1987), review denied, 525 So.2d 878 (Fla. 1988); Lovell Bros., Inc. v. Kittles, 518 So.2d 319 (Fla. 1st DCA 1987) (distinguishing cases where employer and carrier offer other physicians in the discipline requested, and dispute between the parties is simply over the choice of physicians); Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256 (Fla. 1st DCA 1987); Hill v. Beverly Enterprises, 489 So.2d 118 (Fla. 1st DCA 1986) (setting forth detailed discussion of the respective rights and obligations of a claimant and the employer and carrier with respect to physician selection and changes in authorized physicians); Fuchs Baking Co. v. Estate of Szlosek, 466 So.2d 415 (Fla. 1st DCA 1985); Bradley Construction v. White, 457 So.2d 547 (Fla. 1st DCA 1984) (where claimant is not seeking a *30 change of physicians but is seeking a "new mode of treatment," failure of employer and carrier to offer alternative treatment of the discipline requested by claimant subjects employer and carrier to liability for such treatment if found reasonable and necessary); Gust K. Newberg Construction Co. v. Warren, 449 So.2d 934 (Fla. 1st DCA 1984) (in response to claimant's request for chiropractic treatment, offer of orthopedic surgeons and failure to offer alternative chiropractor subjected employer and carrier to liability for unauthorized chiropractic treatment found to be reasonable and necessary); Sears, Roebuck and Co. v. Viera, 440 So.2d 49 (Fla. 1st DCA 1983) (failure to offer alternative chiropractic care in response to claimant's request, and offer of orthopedic surgeons and neurologists instead, failed to comply with the requirements of subsection 440.13(2) and subjected employer and carrier to liability for unauthorized chiropractic treatment that was reasonable and necessary; claimant not required to seek order of authorization prior to receiving treatment); Deinema v. Pierpoint Condominiums, 415 So.2d 811 (Fla. 1st DCA 1982).
Despite this long-standing rule, the majority affirm the denial of psychiatric treatment by Dr. Springer, stating:
[E]ven had such an issue been presented to the judge of compensation claims, there was not competent substantial evidence from which one could conclude that claimant's position was meritorious. [Footnote omitted]. To entitle her to treatment by a psychiatrist, it was incumbent upon claimant to establish that such treatment was "medically necessary." [Citations omitted]. Here, no evidence was presented which would remotely suggest that treatment of claimant's depression by a psychiatrist, as opposed to a psychologist, was medically necessary. The only evidence offered was Dr. Lane's note that "[claimant] states she has been depressed by the problems associated with her job and her persistent pain. I have referred her to Dr. Springer for treatment of her depression." Neither Dr. Lane, Dr. Springer nor anyone else suggested that claimant's depression could be treated only by a psychiatrist.

This disposition fails to adequately address the manifest errors in the order under review and fails to comport with the applicable statutory provisions.
In this case, Employer and Carrier responded to the request for psychiatric examination and treatment by refusing to authorize Dr. Springer, a psychiatrist. Employer and Carrier have conceded, however, that they recognized that Claimant may well have been in need of such examination and treatment, for they authorized, as found in the appealed order, psychiatric evaluation and care by Dr. Fabrick. Yet Dr. Fabrick was a psychologist who does not qualify as a physician as defined in subsection 440.13(1)(h). By no stretch of imagination can this offer of treatment be said to amount to alternative psychiatric care that complies with the requirements of subsections 440.13(2) and (3). In my view, this case is essentially indistinguishable from the holding in Fuchs Baking Co.:
In the instant case, the E/C not only failed to provide psychiatric treatment after the initial request by claimant, but failed to authorize any psychiatric treatment. Therefore, claimant was entitled to seek unauthorized psychiatric care and later have the reasonableness and necessity of that action determined by the commissioner. The Flanders case [City of Ft. Lauderdale v. Flanders, 416 So.2d 1234 (Fla. 1st DCA 1982)] cited by appellant may be clearly distinguished by the fact that there, although the E/C failed to authorize the doctor requested by claimant, it did provide alternative treatment. Therefore, claimant in that situation should have sought approval from the DC prior to beginning treatment. This court has made it clear that a claimant may seek unauthorized medical treatment where authorization has been requested and refused by the E/C.
466 So.2d at 419.
In all of the cases I have reviewed where payment of unauthorized medical care was not approved either by the judge of compensation claims or this court, it was clearly established that no breach of the duty to *31 offer alternative care occurred because the employer and carrier had offered adequate alternative care by a physician of the same discipline as that requested by the claimant. See, e.g., Marcy v. Charlotte Cty. Sheriff's Office, 599 So.2d 1319 (Fla. 1st DCA 1992); Wackenhut Corp. v. Freilich, 464 So.2d 217 (Fla. 1st DCA 1985); Usher v. Cothron, 445 So.2d 387 (Fla. 1st DCA 1984); Commercial Carriers, Inc. v. Porter, 424 So.2d 155 (Fla. 1st DCA 1982), rev. denied, 434 So.2d 888 (Fla. 1983); City of Ft. Lauderdale v. Flanders, 416 So.2d 1234 (Fla. 1st DCA 1982).
Of course, when the record clearly shows "claimant's abiding intention to accept only his originally specified choice of caretakers" and "claimant's choice has not in fact been necessitated by carrier's omission" to offer alternative care by another physician of the same discipline, retroactive payment of unauthorized medical care is not appropriate. Champlain Towers v. Dudley, 481 So.2d 532, 533-34 (Fla. 1st DCA 1986). But the appealed order contains no finding as to this fact, and this record would not support such a finding because, at the time that Employer and Carrier offered alternative care by Dr. Fabrick, Claimant was not represented by counsel and was not fully informed by Employer and Carrier, or anyone else, of her right to have alternative psychiatric care from a psychiatrist rather than psychological evaluation and counseling from a psychologist; nor was it shown that she, as distinguished from Dr. Lane, should have or did know the difference between the two. To require Claimant in these circumstances to advise the Carrier that she rejects the proffered psychologist because he was not a psychiatrist completely defeats the self-executing nature of Employer and Carrier's obligation under section 440.13. Hence, this case is more like Gust K. Newberg Construction Co., where this court found "no indication that claimant would have rejected such care by anyone other than Dr. Burak [the physician she had requested]." 449 So.2d at 935. In that case, we approved the order awarding benefits as it properly resolved "the factual question of whether chiropractic care was necessary at the time in question so as to permit award of the cost of such service obtained by claimant after the attempt at deauthorization." Id. Thus, the majority opinion misconstrues and misapplies this decision and Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320, as authority for affirming the appealed order in this case because Employer and Carrier have conceded that Claimant was in need of psychiatric evaluation, but in responding to that request clearly breached their duty under the statute to offer alternative care by a physician meeting the statutory requirement.
For these reasons, I would reverse the order under review and remand for further proceedings consistent with this opinion.
NOTES
[1] Dr. Lane did not testify. However, his medical notes were received in evidence.
[2] Like Dr. Lane, Dr. Springer did not testify. However, various medical records from his office were received in evidence.
[3] We note that it is highly questionable whether the record contains competent substantial evidence from which one might conclude that claimant's need for treatment of her depression was causally related to her accident. However, as that issue was not raised below, we, likewise, decline to consider it.
[4] Section 440.13(3)(d)1.d., Florida Statutes (1981), provides:

"Health care provider" means a physician licensed under chapter 458, an osteopath licensed under chapter 459, a chiropractor licensed under chapter 460, a podiatrist licensed under chapter 461, an optometrist licensed under chapter 463, a pharmacist licensed under chapter 465, or a dentist licensed under chapter 466.
Similar provisions are currently found in the definition of "physician" in subsection 440.13(1)(h), Florida Statutes (Supp. 1990). "Health care provider" is currently defined as "a physician or any recognized practitioner who provides skilled services pursuant to the prescription of or under the supervision or direction of a physician." Section 440.13(1)(b), Fla. Stat. (Supp. 1990). See also § 440.13(1), Fla. Stat. (Supp. 1992). Dr. Fabrick does not qualify under this definition of "health care provider" because he was not expected to act "under the supervision or direction of a physician."