PER CURIAM.
This appeal arises from an order of the judge of compensation claims (JCC) requiring the employer and carrier (E/C) to pay indemnity benefits and all medical bills arising from the treatment of claimant’s cardiac condition. We must reverse and remand.
The bizarre course of events of this case began on September 2, 1992, when claimant Carmella Geurtze suffered an injury to her left hand and thumb while working for her employer, Ben Franklin Crafts. The E/C accepted the claimant’s injury as compensa-ble and authorized treatment by Dr. Edward Dupay, orthopedic surgeon. After a period of unsuccessful conservative treatment, Dr. Dupay offered a surgical approach to her injury. The surgery was authorized by the E/C and scheduled for October 19, 1992.
While on the operating table, the anesthesiologist injected claimant with a local anesthetic called Nesacaine. Almost immediately, claimant’s heart rate became very rapid and she felt a pain in her chest from what was diagnosed as myocardial ischemia. Claimant was then given labetalol, which stabilized her reaction to the Nesacaine. The *774 surgery was canceled and osteopath, Dr. Ronald Weiner, was called in to evaluate claimant. On Dr. Weiner’s recommendation, a cardiac catheterization was performed the next day. The catheterization indicated a blockage in one of claimant’s heart arteries. Accordingly, an angioplasty to clear the blockage was scheduled and performed the following day. During the course of the angioplasty, wires involved in the procedure nicked a flap of tissue inside claimant’s blocked artery, causing an immediate closure or dissection of the blood vessel. This dissection required claimant to undergo emergency bypass surgery.
On November 3, 1992, claimant filed a claim for benefits seeking disability benefits and authorization and payment for all medical treatment relating to her cardiac care. The E/C denied the claim, asserting, inter alia, that claimant’s cardiac problems were not related to the industrial accident; that the medical care and treatment rendered were neither requested nor authorized; and that the medical care and treatment were not an emergency.
Following a hearing, the JCC entered an order requiring the E/C to pay indemnity benefits and all medical expenses relating to claimant’s cardiac condition. Specifically, the JCC found that claimant’s cardiac care and treatment were causally related to the industrial accident. The JCC further found that the cardiac care and treatment were reasonably necessary under the circumstances because it was due to claimant’s reaction to the anesthetic and because claimant’s heart condition was a hindrance which had to be eliminated in order to perform claimant’s hand surgery. Further, the JCC found that authorization was not required under the circumstances in this case and that, even if it was, the JCC had discretion to excuse the authorization.
On appeal, the E/C have not raised an issue as to the causal relationship between the treatment of claimant’s compensable hand injury and the manifestation of claimant’s underlying cardiac condition. Nor do the E/C dispute that the law provides for treatment of claimant’s cardiac condition if it impedes treatment of her hand. See Urban v. Morris Drywall Spray, 595 So.2d 60 (Fla. 1st DCA 1991). The pivotal issue raised by the E/C is whether claimant was required to request and obtain authorization for her cardiac care and treatment, specifically the cath-eterization and angioplasty. We hold that under section 440.13(2)(a), Florida Statutes (1991), claimant was required to seek such authorization.
Section 440.13(2)(a) states, in part, that an employer shall furnish the employee medically necessary remedial treatment and care as the nature of the injury or process of recovery may require. This section further states:
However, no health care provider may refer the employee to another health care provider, diagnostic facility, pain program, ... or other facility without the prior authorization from the carrier or the employer if self-insured except in cases where emergency care is required.
§ 440.13(2)(a), Fla.Stat.[1] (emphasis added). The JCC does not have unlimited discretion to excuse authorization; there must be an emergency or some other recognized exception.
Here, Dr. Dupay referred claimant to Dr. Weiner for evaluation of her cardiac condition. The procedures performed by Dr. Weiner, specifically the catheterization and the subsequent angioplasty, were not requested by either the claimant or her physicians. See § 440.13(2)(d), Fla.Stat. Nor were the procedures authorized by the E/C, as required by the plain language of section 440.13(2)(a), Florida Statutes. Accordingly, we hold that the diagnostic care and subsequent treatment provided by Dr. Weiner is *775 not compensable absent a finding of an emergency. See, e.g., Fawaz v. Florida Polymers, 622 So.2d 492 (Fla. 1st DCA 1993); Robinson v. Shands Teaching Hospital, 625 So.2d 21 (Fla. 1st DCA 1993). Since claimant’s bypass surgery was the direct result of the unauthorized angioplasty, it too is not com-pensable absent a finding of emergency.
Because the holding below allowed the expenses on another, improper, basis, the JCC did not reach the question of whether the unauthorized medical expenses were due to an emergency, and thus were allowable, under section 440.13(2)(a), Florida Statutes. Since the order failed to address this important issue, we REVERSE and REMAND for further consideration.
BOOTH, ALLEN and BENTON, JJ., concur.

. Prior to the 1990 amendments to section 440.13(2)(a), authorized doctors were able to refer an employee/patient to another doctor for the purpose of obtaining medical diagnoses, evaluation or treatment without an E/C's consent and authorization. The amended provision “was no doubt crafted in an effort to provide the [E/C] with complete control over the delivery of medical services to injured employees for the purpose of curtailing unnecessary medical services and expenses...." Robinson v. Shands Teaching Hospital, 625 So.2d 21, 24 (Fla. 1st DCA 1993) (Judge Zehmer dissenting).