THOMAS, J.,
dissenting.
I respectfully dissent.
Coverage under the Florida Workers’ Compensation Law is predicated on the existence of an employment contract, whether oral or written, express or implied. See § 440.02(15)(a), Fla. Stat. (2010) (defining employee as person who receives remuneration under employment contract, whether express or implied, oral or written); see also § 440.09(1), Fla. Stat. (2010) (providing that employer is required to secure compensation for employees). The Legislature has drawn the textual boundaries of coverage under the Workers’ Compensation Law and, under its plain language, the existence of an employment contract is required. Notwithstanding the innumerable factual circumstances that might give rise to an employment contract, it is fundamental that all con *1223 tracts — even implied contracts created by conduct alone — are governed by legal principles, require necessary evidentiary showings (with relevant burdens of persuasion inhering therein), and are ultimately governed by an appropriate standard of appellate review.
The majority, having been presented with a case where it is conceivable that an employment contract was formed — had the evidence been accepted by the JCC — has incorrectly interpreted the legal elements necessary to prove the existence of a contract.
In so doing, the majority has overlooked the role of the JCC as the finder of fact, and this court’s limited role on appeal to review such findings for competent, substantial evidence. As explained below, in my view, the only conceivable employment contract that was entered into between Claimant and Employer before the accident in question was an implied-in-fact contract, because the existence of neither an express contract nor a contract implied in law can be established on this record. Here, the existence of an implied-in-fact contract, and its terms, is dependent on evidentiary proof and factual findings; however, the facts that might have established an implied-in-fact contract were resolved against Claimant. Accordingly, we should affirm the order on appeal.

No Express Contract

An express contract is an actual agreement between the parties, the terms of which are openly uttered or declared at the time of formation. See Rabon v. Inn of Lake City, Inc., 698 So.2d 1126, 1131 (Fla. 1st DCA 1997). The formation of a contract “depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs— not on the parties having meant the same thing but on their having said the same thing.” Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp., 302 So.2d 404, 407 (Fla.1974) (quoting Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla.1957)). Here, the majority does not set forth an express employment contract that might have been formed at the time of Claimant’s automobile accident, or the terms of such an agreement — nor would the record support finding that an express employment contract had been reached before Claimant’s automobile accident. Indeed, the agreement that Claimant signed pertaining to his pre-employment orientation contains an express provision that indicates Claimant had not been hired by Employer, stating it was “not an offer of employment and should not be viewed as such.”
Thus, I must assume that the employment contract upon which the majority bases its result is not a written or express contract based on the actual words or promises of the parties, but rather an implied contract.
Significantly, however, the majority does not identify whether the implied contract upon which it bases its decision is a contract implied in fact — a tacit promise made by Employer — or an implied contract imposed by law — a legal fiction that creates a contractual remedy where one party has been unjustly enriched by receiving something of value from the other party, in the absence of an express contract. See Rabon, 693 So.2d at 1131 (explaining differences between express contract, implied-in-fact contract, and implied-in-law contract).

No Contract Implied by Law

“A contract implied by law is a legal fiction, an obligation created by the law without regard to the parties’ expression of assent by their words and conduct.” Am. Safety Ins. Serv., Inc. v. Griggs, 959 So.2d 322, 331 (Fla. 5th DCA 2007) (quot *1224 ing Commerce P’ship 8098 Ltd. P’ship v. Equity Contr. Co., 695 So.2d 383, 386 (Fla. 4th DCA 1997) (citations omitted)); see also Rabón, 693 So.2d at 1132 (“[I]t may be said obligations of this type should not be properly considered contracts at all, but a form of the remedy of restitution”) (citing to Restatement (Second) of Contracts § 4, cmt. b (1982)). The elements necessary to establish a contract implied by law (or a quasi-contract) are that: “(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.” See Griggs, 959 So.2d at 331 (quoting Commerce P’ship 8098 Ltd. P’ship v. Equity Contr. Co., 695 So.2d 383, 386 (Fla. 4th DCA 1997) (citations omitted)). This record demonstrates that Claimant and Employer agreed that Claimant would be provided lodging and meals for attending the pre-employment orientation (a title that both expressly and implicitly bespeaks the non-existence of an employment relationship). By written agreement, Claimant would receive an additional $100 if, and only if, Claimant were thereafter hired by Employer.
At trial, Claimant did not establish, nor did he attempt to establish, that Employer was unjustly enriched by his attendance at the orientation, nor does Claimant aver as much in his briefs filed with this court. Importantly, the JCC did not find unjust enrichment, nor would the record support such a finding.
Accordingly, on this record, Claimant cannot establish an employment contract implied by law, and it is relatively clear that the majority’s ruling does not rest on the existence of a contract implied by law. Hence, it is apparent that the majority, rather than relying on the terms of an express contract, or a contract implied by law, is concluding that an employment relationship was formed based on a contract implied in fact. As discussed below, however, because the record supports the JCC’s finding that Employer never formed the intent to create any employment relationship with Claimant until after the orientation, we are required to affirm the appealed order. A contract implied in fact, just as an express contract, is dependent on a factual finding of mutual consent and agreement of the parties, which did not exist in this case.

No Contract Implied in Fact

A contract implied in fact requires the same elements as an express contract — for relevant purposes here, a mutual intent to contract — and differs only in the parties’ method of expressing mutual consent. The United States Supreme Court has explained:
An agreement implied in fact is “founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.”
Hercules Inc. v. U.S., 516 U.S. 417, 423-24, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (quoting Baltimore & Ohio R. Co. v. United States, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)). This court has stated on numerous occasions that a workers’ compensation claimant bears the burden of proving entitlement to benefits. See Robinson v. Shands Teaching Hosp., 625 So.2d 21, 23 (Fla. 1st DCA 1993) (explaining workers’ compensation claimant has burden of proving entitlement to benefits denied by the employer). Here, this would require Claimant to prove the existence of an employment contract formed before his accident.
*1225 The Employer’s representative testified that Employer had no intention of hiring Claimant until after the orientation program was complete, and further testified that Claimant was not hired until after the orientation program was completed and Claimant had met all pre-employment requirements. Claimant testified that he considered himself hired at the time of orientation because he knew he would pass the drug test and the physical; importantly, however, Claimant did not testify to any words or conduct of Employer indicative of a mutual agreement. The JCC found, in essence, that Claimant failed to prove a set of circumstances from which she could infer that the parties had entered into an employment contract before Claimant’s accident. We have held that the party with the burden of persuasion must present evidence the JCC finds persuasive, and a decision in favor of the party without the burden of persuasion need not be supported by competent, substantial evidence. See Mitchell v. XO Commc’ns, 966 So.2d 489, 490 (Fla. 1st DCA 2007); see also Fitzgerald v. Osceola County Sch. Bd., 974 So.2d 1161, 1163 (Fla. 1st DCA 2008) (stating decision in favor of party without burden of proof need not be supported by competent, substantial evidence).
Further, even if the Employer here bore the burden of demonstrating that the JCC’s order should be affirmed, which it does not, the “standard of review in worker’s compensation cases is whether competent, substantial evidence supports the decision below, not whether it is possible to recite contradictory record evidence which supported the arguments rejected below.” Wintz v. Goodwill, 898 So.2d 1089, 1093 (Fla. 1st DCA 2005) (quoting Mercy Hosp. v. Holmes, 679 So.2d 860, 860 (Fla. 1st DCA 1996)) (emphasis in original). Because the record here supports the JCC’s finding that Claimant failed to establish that an employment contract was formed before the accident occurred, and further, because the law supports a conclusion that Claimant’s unilateral subjective beliefs about his employment status are insufficient to show a contract implied in fact, we should affirm. Although it is certainly worth noting that Claimant was paid money after completing the orientation session (which Claimant argues represents wages paid for attending the orientation session), this single fact is far from dispositive of the ultimate question presented in this case. This is especially true where the Employer’s representative testified that this money was intended as startup money for new drivers, not as wages for work performed, and the JCC credited this testimony as truthful. It is the party’s employment status at the time of the accident that controls liability for workers’ compensation purposes. See generally, Specialty Employee Leasing v. Davis, 737 So.2d 1170, 1172 (Fla. 1st DCA 1999) (holding employee leasing company not responsible for workers’ compensation coverage where there was no evidence establishing claimant was employee of leasing company at time of accident); Theis v. City of Miami, 564 So.2d 117, 119 (Fla.1990) (“The legal status at the time of injury should control.”).
Thus, assuming that Employer improperly classified its payments to Claimant as wages, this would be but one fact indicating an intent other than that testified to by Employer, to be weighed by the JCC. Such payments would not, however, create a de facto, retroactive employment contract as a matter of law, where no such contract was formed by the mutual assent of the parties in real time. Based on the foregoing, therefore, I would affirm.